403 So.2d 1255 (1981)
HOTEL DIEU et al.
v.
Erroll G. WILLIAMS et al.
Nos. 12101, 12102.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1981.
*1256 Otto B. Schoenfeld, Denechaud & Denechaud, New Orleans, for plaintiffs-appellants.
William J. Guste, Jr., Atty. Gen., Louis M. Jones, Robert L. Danner, Jr., Asst. Attys. Gen., Dept. of Justice, Salvador Anzelmo, City Atty., Joseph N. Naccari, Asst. City Atty., New Orleans, for defendants-appellees.
Before REDMANN, SCHOTT and KLIEBERT, JJ.
REDMANN, Judge.
The question in this case is whether a nonprofit hospital corporation generally exempt from taxation of its property is subject to property taxation upon part of its land and a medical office building and parking facility it built thereupon (through an alter-ego corporation). The answer involves construing, for the first time, the general exemption provided by La.Const. 1974 art. 7 § 21(B)(1) and the limitation on the exemption provided by the last paragraph of § 21(B).
Those provisions read:
(B)(1) Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax;
* * * * * *
None of the property listed in paragraph (B) shall be exempt if owned, operated, leased, or used for commercial purposes unrelated to the exempt purposes of the corporation or association.
We conclude that the language of art. 7 § 21(B)(1) will not support any other grammatical construction than that it exempts all "[p]roperty owned by a nonprofit corporation" which corporation (not which corporation's property) is "organized and operated exclusively" for specified benevolent purposes (including health purposes). It is only the last paragraph of § 21(B) that reduces the universality of that exemption, and that last paragraph denies the exemption only to property "owned, operated, leased or used for commercial purposes unrelated to the exempt purposes of the corporation ....". We conclude that the providing of medical office (and pharmacy and laboratory) spaces and parking space, in the immediate vicinity of a nonprofit hospital, by the hospital either directly or through a related nonprofit corporation created for that purpose, is not a "commercial purpose unrelated to the exempt purposes" of a hospital. We therefore reverse.

*1257 Facts

A hospital named Hotel Dieu has existed in New Orleans for over 100 years. In 1912 the hospital became a non-profit corporation, now named "Hotel Dieu," whose members are the West Central Provincial Council of the Daughters of Charity of St. Vincent de Paul. Hotel Dieu also operates, in conjunction with the hospital, a school of nursing and conducts, in cooperation with Louisiana State University, medical, educational and research projects as well as residencies and internships. Several years ago a new building was constructed for the hospital, adjacent to its old building. The old building was thereafter demolished, leaving an area of vacant land lying near the central business district of New Orleans. Hotel Dieu decided to erect a building (the Seton Professional Building here involved) upon that land "as a support facility for Hotel Dieu Hospital" to provide office space for doctors on the hospital's medical staff (as well as a pharmacy and snack bar) and to provide parking space for both the hospital's and the office building's purposes.
For that reason in July, 1974, Hotel Dieu's administrator, associate administrator, comptroller and "one other member who shall be a member of the religious community of the Daughters of Charity of St. Vincent de Paul in residence at Hotel Dieu Hospital ... selected by the other three ex-officio members" formed with themselves as its only members (a charter amendment in August 1978 expanded membership) a non-profit corporation named "Seton Professional Building, Inc."
Hotel Dieu then "leased" its vacant ground to Seton for $1 yearly rent plus any excess of income over costs Seton might realize from renting the building. Other provisions of this "lease" indicating the fact that Seton was nothing more than the agent of Hotel Dieu include the right granted to Hotel Dieu at any time, upon 15 days' notice, "to purchase all of the assets of [Seton], ... for which the consideration shall be, the assuming of all debts of Seton... by Hotel Dieu, without further or other consideration of any kind." (Hotel Dieu is also, under Seton's corporate charter, the nonprofit corporation to whom Seton's net assets go upon voluntary dissolution.)
Upon that leased land the Seton Professional Building was built in 1975 (financed, appellants' brief avers, by the Daughters of Charity). The building has been only 70 to 80% tenanted. As of December 31, 1979 there were 11 leases for doctors' private offices, one for the "L.S.U. Clinic" (the private practice of a group of faculty members of Louisiana State University medical school), one for a medical laboratory, one for the general office of the New Orleans Academy of Ophthalmology, one for a pharmacy and one (2,309 sq. ft., 3.72% of the building) for a restaurant. Most of the doctors (including the L.S.U. doctors) are on the Hotel Dieu medical staff (which means only that they are authorized to admit patients to Hotel Dieu; they may be on other hospital staffs, but 90% of the private physician tenants send all and the other 10% send a substantial portion of their patients for hospitalization to Hotel Dieu). The offices in the Seton building serve, neverthless, as the offices in which the tenant physicians see all their patients.

Discussion
We have previously stated our construction of the 1974 Constitution's pertinent provisions. That construction is supported by VIII Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts.[1] The very examples of purposes *1258 not refused exemption by the language "commercial purposes unrelated to the exempt purposes" were a pharmacy, a pathology or x-ray laboratory, and a refreshment stand in a hospital. An example of a purpose refused exemption by the language was "if that hospital ... has a parking lot downtownfive blocks away [from the hospital]then they are in an unrelated business activity ... taxable for ad valorem tax purposes." (P. 2025.) The context makes it clear that the location of the parking lot where it would not serve the hospital was the decisive factor. ("That parking lot downtown has nothing to do with the activities, the exempt purpose" of the hospital.) Furthermore, the context makes it clear that the delegates understood the basic exemption of the specified nonprofit corporations' property was of all their property.
The 1974 Constitution's system of exempting all property (with exceptions) of specified non-profit corporations was a change from the 1921 Constitution's exempting specified property in art. 10 § 4, para. 2:
Places of religious worship ...; places of burial; places devoted to charitable undertakings...; schools and colleges; athletic or physical culture clubs ... being non-profit ...; but the exemption shall extend only to property ... used for the above mentioned purposes, and not leased for profit or income.
The 1921 language thus granted the property exemption to specified properties, with the consequence that ownership by a non-profit corporation or association (or club) was irrelevant: a place of religious worship was exempt from taxation irrespective of its ownership. A hospital was exempt only as a "place devoted to charitable undertakings," and when a hospital was converted to a nursing home accepting only paying patients the property was subject to taxation because not "devoted to charitable undertakings." Ruston Hospital, Inc. v. Riser, La.App. 2 Cir. 1966, 191 So.2d 665. We suggest that even vacant, unused land given to an exempt hospital would have been taxable because not so "devoted."
The 1974 Constitution's language, by way of comparison, grants the exemption to property precisely on the basis of the benevolent *1259 character of its owner: a place of worship would not appear to be exempted if owned by an individual. The basis for exempting a hospital like Hotel Dieu today lies in its ownership by a "nonprofit corporation or association organized and operated exclusively for ... charitable, health ... or educational purposes ...," and it may arguably be that the presence of "health ... purposes" would grant the exemption to a nonprofit corporation whose sole function is to operate a nursing home.[2] But, assuming that the operation of a nursing home for paying patients is not among "health ... purposes," it would be difficult to conclude that an admittedly exempt hospital which erected a nursing home on its hospital grounds would be taxable on the nursing home because that would necessitate holding that the nursing home is "unrelated" to the hospital's hospital purposes. Consider also the hypothetical case of vacant, unused land given to an exempt hospital: would not that land become exempt because owned by an exempt corporation and not used for commercial purposes? The 1974 language does not deny the exemption if the property is not used for the exempt purpose (as did the 1921 language), but only if it is used for "commercial purposes" and, more precisely, for "commercial purposes unrelated to the exempt purposes ...." (Emphasis added.)
The 1974 Constitutional Convention showed its understanding of "unrelated" purposes: a parking garage "downtown five blocks away" from the hospital that owned it would constitute an unrelated use, therefore taxable, while a parking facility on the hospital grounds, intended to facilitate patients, staff and visitors, would not be "unrelated." Some food-serving facility (what hospital save the smallest has none?) available to staff and visitors at a hospital was also recognized as a related purpose exempt from taxation.
In the matter before us, too, the exemption cannot be denied unless it is a purpose "unrelated" to the hospital's exempt "health ... or educational purposes" for the hospital to provide, in its immediate vicinity, office space for the doctors on its medical and instructional staff and parking space for them and their patients as well as for hospital visitors (plus a pharmacy and a restaurant). Neither state nor city so argues in defending this action. Their arguments are based on cases like Ruston Hospital (also argued to the trial court), interpreting the 1921 rather than the 1974 Constitution. As we have shown, there are stark differences between the two constitutions.
Defendants also argue the general rule of strict construction of exemptions, "that exemptions from taxation are to be strictly construed ... and that any plausible doubt is fatal" to the exemption, Mattingly v. Vial, 1939, 193 La. 1, 190 So. 313, 315. We find no "plausible doubt" in the construction we give to the 1974 Constitution, and we cannot find any plausible justification for a conclusion that the building in question is "owned, operated, leased or used for commercial purposes unrelated to the exempt purposes" of Hotel Dieu. The judgment of the trial court erred in its evident reliance upon the pre-1974 jurisprudence construing the 1921 Constitution.
The judgment is reversed; judgment in favor of plaintiffs decreeing the subject property exempt under La.Const. art. 7 § 21(B)(1).
NOTES
[1] E.g.: Mr. [now Justice] Dennis: "[I]t's my appreciation of that; that that does not say anyone can make a profit; that simply says that a hospitalfor exampleif it operates a cigar stand, or lets someone ... lets a pharmacist operate a pharmacy, or lets a doctor operate a pathology or an X-ray lab inside the hospital, if somebody comes along and says those are commercial purposes, then we aren't going to throw the whole hospital on the tax rolls because those are related purposes." (2023.)

Mr. [now Justice] Dennis: "Now, if they take some property downtown and lease it out for a haberdashery or something, that's clearly not related to an educational purpose and it would not be exempt. Now, I appreciate your concern. This is the same concern Mr. Lennox had. But, I ask you to look what you're doing if you take this outwhat you're doing to hospitals. Hospitals have to run some things that people make money out of in their hospitals, such as: X-ray labs, pathology labs, pharmacies, and I said cigar stands, but I'll amend that to say refreshment stands for Mrs. Warren's benefit. Now, somebody could come along and say these are commercial purposes. I don't think you ought to say that, but somebody might. If one of these purposes were to be classified as commercial, it would make the whole hospital be subject to taxes even though it is related to the operation of a hospital. So, that's the reason for that last line in there. As long as the hospital is doing something that is related to running a hospital, I don't think that it should lose its exemption even if somebody could classify it as commercial. I don't think that that endangers what you're trying to guard against and, that is, Tulane renting out a store downtown, because that is clearly unrelated to the purpose of Tulane, which is educational. (2025.)
* * * * * *
Mr. Lowe: "First of all, ... we did want to exempt the organizations that are enumerated in the first part of this amendment. But ... we are concerned about those organizations that are not legitimate, but could go out and organize themselves under the nonexempt [sic, nonprofit?] statutes .... Now, to cover that, you additionally have to get an income tax exemption. If you can't meet the requirements for that income tax exemption, ... you can be organized under any statute you want. This amendment still would not give you an exemption from ad valorem taxes .... [T]he second concern was ... tax-exempt organization ... competing with free enterprise .... [T]he federal government ... took care of that particular problem by saying that any unrelated business incomea hospital is organized for the purpose of carrying on medical treatment .... Now, if that hospital that is tax-exempt has a parking lot downtownfive blocks away then they are in an unrelated business activity. That parking lot downtown has nothing to do with the activities, the exempt purpose for which that organization was organized and received its exempt status. So then, that unrelated business income is taxable; it's also, according to this amendment, taxable for ad valorem tax purposes." (2025.)
[2] Because we view Seton Professional Building, Inc. so purely the alter ego of Hotel Dieu, we do not reach the question of whether exemption is also obligatory under Seton's tax-exempt purposes "as a support facility" for Hotel Dieu (notwithstanding the charter's simple specification "1. To own and operate a professional office building with close proximity to Hotel Dieu; 2. To rent space to members of the medical-dental profession, provide space for a pharmacy, snack bar and garage, and to furnish such other related services ordinarily provided in a professional office building.").