701 So.2d 702 (1997)
BOARD OF ADMINISTRATORS OF THE TULANE EDUCATION FUND
v.
LOUISIANA TAX COMMISSION.
Thomas L. ARNOLD, in his capacity as Assessor for the Fifth Municipal District for the Parish of Orleans
v.
BOARD OF ADMINISTRATORS OF THE TULANE EDUCATION FUND.
Nos. 97-CA-0663, 97-CA-0664.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
*703 Salvador Anzelmo, A. Mark Flake, Michael J. Laughlin, New Orleans, for Appellant Thomas L. Arnold, in his capacity as Assessor for the Fifth Municipal District for the Parish of Orleans.
Moise S. Steeg, Jr., Steeg and O'Connor, New Orleans, for Appellee Administrators of the Tulane Education Fund.
Thomas A. Rayer, Denechaud and Denechaud, New Orleans, for Amicus Curiae, the Roman Catholic Church of the Archdiocese of New Orleans.
Jack Hoffstadt, Deputy City Attorney, Deborah L. Wilson, Chief Deputy City Attorney, Avis Marie Russell, City Attorney, New Orleans, for Amici Curiae, the City of New Orleans and the Board of Assessors of the City of New Orleans.
Brian A. Ferrara, General Counsel, Gerard M. Victor, Assistant Special Counsel, John D. Lambert, Jr., Special Counsel, Sewerage and Water Board of New Orleans, New Orleans, for Amicus Curiae, the Sewerage and Water Board of New Orleans.
Before ARMSTRONG, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
Orleans Parish Fifth District Tax Assessor Thomas L. Arnold appeals the trial court's decision that Article VII, Section 21 of the 1974 Constitution exempts vacant, undeveloped land inherited by the Board of Administrators of the Tulane Education Fund from ad valorem property taxes. We affirm.
The property at issue is two adjacent unimproved twenty-five by one hundred foot lots, totalling 5,000 square feet, located in Algiers, Louisiana, within the Orleans Parish Fifth Municipal District. Tulane inherited the lots in 1985, but, as of the time this *704 dispute arose, it took no action to sell, develop or otherwise use them. Although this property is within a mile of English Turn subdivision, it is uncleared woodland, without drainage or any utilities. The southeast corner of the square in which the property is located touches state highway 406, but only a single shelled driveway to a nearby house could provide access to the property.
It is undisputed that Tulane qualifies as a non-profit corporation as defined in Paragraph (B)(1)(a) of Section 21 of Article VII of the 1974 Constitution. This court has determined that Section 21(B) of the 1974 Constitution granted an exemption from ad valorem taxation of all property owned by a qualifying non-profit entity unless the property was used for unrelated commercial purposes. Hotel Dieu v. Williams, 403 So.2d 1255 (La.App. 4th Cir.1981), affirmed, 410 So.2d 1111 (La.1982). Noting that the vacant land at issue here was not being used for any purpose, the trial court rendered judgment declaring the property exempt from all ad valorem taxes and ordering a refund of all taxes, plus interest and costs.
On appeal, Assessor Arnold contends that the trial court erred when it determined that this property was not being used for any purpose. Mr. Arnold contends that the district court relied on the fact that Tulane currently was not deriving income from the land, a factor that he suggests is irrelevant to determining if Tulane owned this property for a commercial purpose. He argues that Tulane's failure to dispose of the property demonstrates a conscious decision to wait for its value to increase. He contends that holding property in the hope that it will appreciate in value is investment activity that equates with a commercial purpose, and points out that this property would not be exempt from ad valorem taxation if it were owned by a for-profit entity. He argues that the exemption provision of Article VII, Section 21(B) must be strictly construed in favor of taxation so that this court is required to reject the interpretation adopted by the court below.
The Assessor's arguments are reiterated by amici curiae, the City of New Orleans, the New Orleans Board of Assessors, and the Sewerage and Water Board of New Orleans. Amici also argue that the exemption of passive investment property, such as this, will erode the tax base beyond that which was intended by those ratifying the 1974 Constitution.
Although Tulane also claims exemption from taxation under Article VIII, Section 14 of the Constitution, we pretermit discussion of this claim because of our holding under Article VII, Section 21(B).
As to the Assessor's argument that its failure to use or dispose of this property constitutes a commercial use unrelated to education that precludes exemption, Tulane asserts that Section 21(B) requires a non-profit entity to have taken some action regarding its property in order to find that it is being used for a commercial purpose.
This position is adopted by the Roman Catholic Church of the Archdiocese of New Orleans, amicus curiae, which offered transcript excerpts from the Constitutional Convention of 1973 to support that position. It argues that these excerpts demonstrate that the delegates intended to accord the same ad valorem tax treatment to a non-profit corporation as that provided by federal tax laws: a full exemption except for that property that is put to use in a trade or business that competes with for-profit enterprises. It contends that Tulane, which does not otherwise engage in the purchase, sale or development of real estate and merely accepted the donation of this land, cannot be using this property for a commercial purpose.

DISCUSSION:
Article VII, Section 21 of the 1974 Constitution provides in pertinent part:
In addition to the homestead exemption.., the following property and no other shall be exempt from ad valorem taxation:
* * * * * *
(B)(1)(a) Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or *705 member thereof and which is declared to be exempt from federal or state income tax; ...
* * * * * *
None of the property listed in Paragraph (B) shall be exempt if owned, operated, leased, or used for commercial purposes unrelated to the exempt purposes of the corporation or association. (Emphasis added.)
This constitutional provision has been construed only once before. In Hotel Dieu v. Williams, supra, this court explained that Section 21(B) first exempts all property belonging to a qualified nonprofit corporation, and then excludes from that exemption certain specified property: that which is "owned, operated, leased, or used" for an unrelated commercial purpose.
Even though the land at issue here is vacant and undeveloped, and thus is characterized as "unused," it may nevertheless be classified as non-exempt property if it is "owned ... for commercial purposes unrelated to [Tulane's] exempt purposes." Thus, on the facts presented here, we agree with the contention that neither the undeveloped state of these lots nor Tulane's failure to derive current income from the property is determinative of its status as exempt or non-exempt. Nor does that status turn on whether the purpose for which Tulane owns the land is related to its exempt purpose; Tulane makes no claim that the land was either acquired or retained for any educational purpose, or that it has any plans to build an educational facility on the property. Rather, the determination of whether this property is exempt or excluded from exemption requires us to decide if Tulane owns this property for a commercial purpose.
For the purpose of this appeal, we will accept Assessor Arnold's assertion that these two lots are being held by Tulane in the hope that they may appreciate in value. We note, however, that there is no indication that Tulane solicited the donation of this property, exchanged anything of value for it, or even deliberated whether the land should be sold or retained. Instead, it appears that after accepting the donation mortis causa, Tulane merely failed to take any further action with regard to these lots. Additionally, although this record suggests that Tulane owns considerable immovable property throughout this state, no one argues that Tulane is a real estate broker or developer, or even that there is any connection between the status of these two vacant lots under Article VII, Section 21 and any other property held by Tulane. Therefore, while we will assume for purposes of discussion that this land is being held for appreciation as an "investment", we expressly reject any inference that there has been "investment activity" by Tulane.
These lots can be excluded from the tax exemption afforded by Section 21(B)(1)(a) only if undeveloped land held as an investment constitutes ownership for a "commercial" purpose as contemplated by Section 21(B)(1)(a). We find nothing in the transcripts of the Constitutional Convention that supports the conclusion that the framers intended for the exclusion to be so broad. Instead, the discussions demonstrate only the delegates' intent to limit a non-profit entity's ability to engage in business activity in competition with for-profit enterprises. See, e.g., Hotel Dieu, 403 So.2d at 1257-58 n. 1, quoting from the convention transcripts. These excerpts establish that it was not the mere ownership of property by a non-profit association that was to be discouraged, but that property's usage in a business enterprise, such as a parking garage, an office building, or a television station. It is undisputed that no business activity is being conducted on the vacant lots at issue here.
The fact that this property would be subject to ad valorem taxation if owned by an individual or a for-profit entity does not require us to conclude that Tulane's holding this property as an investment serves a "commercial" purpose. The disparity in treatment vis-a-vis taxation is related to the status of the holder. An individual or for-profit entity pays taxes on property it owns, not because its ownership is a commercial activity, but because he or it is not included within the class of those defined as exempt in Section 21(B)(1)(a).
*706 For these reasons, we cannot find that Section 21(B)'s exclusion from exemption of any property "owned ... for commercial purposes" was intended to encompass vacant, undeveloped land inherited by a non-profit educational association and thereafter held in the hope that it will appreciate in value. Because the property at issue is not being used for any "commercial" purpose, it is not excluded from the general tax exemption of Section 21(B)(1)(a). Therefore, the judgment below is affirmed.
AFFIRMED.