MAX N. TOBIAS, JR., Judge.
I,The issue before us is whether an immovable property owning Louisiana limited liability company that is a wholly-owned affiliate of a Delaware nonprofit corporation qualified to do and doing business in Louisiana and income tax-exempt under 26 U.S.C.A. § 501, 26 U.S.C.A. § 501, is exempt from paying ad valorem taxes on that immovable property. The matter comes before this court on a devolutive appeal of the defendant/appellee, Orleans Parish Assessor Erroll G. Williams, against whom the plaintiffs/appellees prevailed on a motion for summary judgment.[1] We review this matter utilizing a de novo standard of review. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. For the reasons that follow, we conclude that the limited liability companies are not exempt from ad valorem property taxes on the immovable property that they own in their own name, even though the property will be utilized for the charitable purposes of the limited liability company’s parent corporation’s |2income tax-exempt purpose. Accordingly, we reverse the judgment of the trial court and remand for further proceedings.
I.
Gulf Coast Housing Partnership, Inc. (“GCHP”), is a Delaware nonprofit corporation licensed to business in Louisiana. It owns and is the sole member and manager of the three Louisiana limited liability *819 companies, GCHP-Jericho, L.L.P., GCHP-MLK, L.L.C., and GCHP-Espla-nade, L.L.C. (collectively, the “LLCs ”), co-plaintiffs herein.[2] Each of these three limited liability companies owns immovable property in Orleans Parish that they assert will be used for housing of the poor.
The Orleans Parish assessor assessed the LLCs ’ immovable property for ad va-lorem property taxes for calendar year 2010. GCHP paid the 2010 property taxes for the LLCs as assessed under protest and commenced this suit against the assessor, the City of New Orleans, and the Louisiana Tax Commission for a refund of the taxes paid.
II.
GCHP claims that the properties titled in the names of the LLCs are ad valorem property tax-exempt under La. Const, art. VII, § 21, because they, GCHP, are 26 U.S.C.A. § 501(c)(3) nonprofit corporation exempt from paying federal and state income taxes.[3] La. Const, art. VII, § 21 states in pertinent part:
|3In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
❖ * *
(B)(1)(a)© Property owned by a nonprofit corporation or association[4] organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax; and
[[Image here]]
(b) property leased to such a nonprofit corporation or association for use solely as housing for homeless persons, as defined by regulation adopted by the tax commission or its successor provided that the term of such lease shall be for at least five years, that as a condition of entering into the lease the property be in compliance with all applicable health and sanitation codes for use as housing for homeless persons, that the lease shall provide that compensation to be paid the lessor shall not exceed one dol *820 lar per year, and that such contract of lease shall recite that the property shall be used exclusively for the purpose of housing the homeless, and further provided that at such time as the property is no longer used solely as housing for homeless persons, the property shall no longer be exempt from taxation;
[[Image here]]
| ¿None of the property listed in Paragraph (B) shall be exempt if owned, operated, leased, or used for commercial purposes unrelated to the exempt purposes of the corporation or association.
The ad valorem tax exemption provided in La. Const, art. VII, § 21 is reserved to property owned by or leased to a “nonprofit corporation or association.” Section B(í )(a) thereof requires that the property meet all four requirements to be exempt: (1) the entity must be a nonprofit “corporation or association” organized exclusively for one of the designated purposes; (2) no part of the net earnings of the “corporation or association” inures to the benefit of a stockholder or member of the “corporation or association;” (3) the nonprofit “corporation or association” must be exempt from federal or state income tax; and (4) none of the property of the nonprofit “corporation or association” is owned, operated, leased, or used for commercial purposes unrelated to the exempt purposes of the “corporation or association.” See La. Arty. Gen. Op 99-401 (1999). Under La. R.S. 12:201(7), a “ ‘nonprofit corporation’ means a corporation formed under this Chapter [2 of Title 12], as well as a corporation formed under the laws of this state before January 1, 1969 but of a class of corporations that might be formed under this Chapter.”[5] The LLCs were formed under La. R.S. 12:1301, et seq., not under La. R.S. 12:201 or La. R.S. 12:1302 C.
|5A limited liability company established under La. R.S. 12:1302 C is known as a “low-profit limited liability company” or “L3C.” An L3C is authorized and defined by section 1302:
C. (1) A limited liability company organized as a low-profit limited liability company shall set forth in its articles of organization a business purpose that satisfies and which limited liability company is at all times operated to satisfy each of the following requirements:
(a) The entity significantly furthers the accomplishment of one or more charitable or educational purposes within the meaning of Section 170(c)(2)(B) of the Internal Revenue Code and would not have been formed but for the entity’s relationship to the accomplishment of charitable or educational purposes.
(b) No significant purpose of the entity is the production of income or the appreciation of property provided; however, the fact that an entity produces significant income or capital appreciation shall not, in the absence of other factors, be conclusive evidence of a significant purpose involving the production of income or the appreciation of property.
(c) No purpose of the entity is to accomplish one or more political or legislative purposes within the meaning of Section 170(c)(2)(D) of the Internal Revenue Code.
(2) If a company that is organized pursuant to the requirements of Paragraph (1) of this Subsection at its formation at any time ceases to satisfy any one of the requirements, it shall immediately cease to be a low-profit limited *821 liability company, but by continuing to meet all the other requirements of this Chapter, shall continue to exist as a limited liability company. The name of the company shall be changed to be in conformance with R.S. 12:1306.
The section was enacted by 2010 La. Acts., No. 417, effective 15 August 2010. At the time the LLCs were created, Louisiana law did not per se authorize nonprofit limited liability companies.
1 «Historically, La. R.S. 12:1301(2) defined “business” for a limited liability company as “any trade, occupation, profession, or other commercial activity engaged in for gain, profit, or livelihood.” In 1997, the definition of “business” was amended to read “any trade, occupation, profession, or other commercial activity, including but not limited to professions licensed by a state or other governmental agency whether or not engaged in for profit.” The legislature apparently enacted section 1302 C to address the statutory deficiencies and ambiguities in the 1997 amendment. That is, the 1997 version that was in effect when the LLCs were formed must be read under ordinary statutory interpretation, La. C.C. art. 9, to mean that a limited liability company could be nonprofit in nature unless it was organized for a governmentally licensed profession only. La. R.S. 12:1301(10) states:
“Limited liability company” or “domestic limited liability company” means an entity that is an unincorporated association having one or more members that is organized and existing under this Chapter. No limited liability company organized under this Chapter shall be deemed, described as, or referred to as an incorporated entity, corporation, body corporate, body politic, joint stock company, or joint stock association.
Reading subsection 10 with subsection 2 of section 1301 demonstrates that for a limited liability company to be tax-exempt or “non engaged in for profit,” it must be organized for a governmentally licensed profession.[6]
Section 1302 C appears to be Louisiana’s equivalency of other states’ nonprofit limited liability companies.[7] See, e.g., Ky. Rev. Stat, T. 23, Ch. 275; 17Minn.Stat. Ann. § 332B.975; N.D. Cen. C. § 10-36-02; Tenn. C. Ann. § 48-101-704. (Perhaps if the LLCs were low-profit limited liability companies organized under La. R.S. 12:1302 C, the appellees’ arguments would be stronger and the results we reach herein might be different.)
The LLCs’ articles of organization provide in pertinent part:
4. Purposes and Powers. The business and purpose of the Company shall be to engage in any activity which may be permitted under applicable law.
5. Tax Treatment. The Company will not be taxed and will be considered a disregarded entity for Federal income tax purposes and shall be operated mainly for scientific, educational, service, charitable, or similar purposes in the *822 public interest; is not organized primarily for profit; and uses net proceeds to maintain, improve, or expand the operation of the organization.
We view this language merely establishing that the LLCs were going to be a business engaged in any lawful enterprise, but intending or hoping to comply with Internal Revenue Service regulations as tax-exempt and thus avoid income tax. Obviously, the language does not address or control the issue of state or local ad valorem tax matters.
Therefore, the issue is whether La. Const, art. VII, § 21(B)(l)(a)(i) allows Louisiana immovable property to be exempt from ad valorem property tax when the property is titled and/or owned directly by a limited liability company that is not directly a 26 U.S.C.A. § 501(c)(3) tax-exempt entity and thus income taxjexempt8 by United States and Louisiana law when the sole member (owner) of the limited liability company is a 26 U.S.C.A. § 501(c)(3) tax-exempt nonprofit corporation, and because the activities of the tax-exempt corporation are not commercial in nature but compliant with law for income tax-exempt purposes. See Hotel Dieu v. Williams, 410 So.2d 1111, 1112 (La.1982).
We do not find from the verbatim transcripts of the Louisiana Constitutional Convention of 1973 that an income tax-exempt entity other than a “corporation or association” which owns immovable property titled in the name of another entity such as a limited liability company would be exempt from ad valorem property taxes.[8] Hotel Dieu v. Williams, 403 So.2d 1255 (La.App. 4th Cir.1981), affirmed, 410 So.2d 1111, 1112 (La.1982); Board of Administrators of the Tulane Educ. Fund v. Louisiana Tax Commission, 97-0663, 97-664, p. 5 (La.App. 4 Cir. 10/1/97), 701 So.2d 702, 705. Only if the immovable property was undeveloped and held by the tax-exempt corporation in its own name as an investment would the immovable be exempt from ad valorem tax. Board of Administrators of the Tulane Educ. Fund, pp. 5-6, 701 So.2d at 705-06. Here, the LLCs acquired the immovable properties for commercial purposes, albeit charitable in nature,[9] to-wit: for “affordable and supportive rental housing for low-income individuals with ^disabilities and for low-income workers.”[10] And as GCHP admits the LLCs were set up to insulate themselves for “liability purposes.”[11] (We also note that in Hotel Dieu, Board of Administrators, and New Orleans Towers, the income tax-exempt corporation owned the immovable property directly, not through a wholly owned affiliate.)
In two recent cases, Abundance Square Associates, L.P. v. Williams, 10-0324 (La.App. 4 Cir. 3/23/11), 62 So.3d 261, and St. Bernard I, LLC v. Williams, 12-0372 (La.App. 4 Cir. 3/13/13), 112 So.3d 922, writ denied, 13-1008 (La.6/14/13), 118 So.3d 1090, we addressed similar, though clearly *823 distinguishable, issues addressing exemption from ad valorem taxes.
In Abundance Square Associates, a public entity, Housing Authority of New Orleans (“HANO”), leased real estate (ground leases) to the plaintiffs for lengthy terms. Under the terms of the leases, the plaintiffs would own the buildings that they constructed for the terms of the leases, provided that the buildings were “qualified low-income [apartment] units” under 26 U.S.C.A. § 42 and a quantified number of the apartments would be used for public housing and/or Section Eight housing-“project based vouchers.” Noting that ownership alone is not the determining factor and that privately owned property may be dedicated to public 11ftuse to attain tax-exempt status, the court found that the record evidence established that the apartments were
all “tax credit” units, meaning IRS regulations prohibit an owner from renting the unit to anyone earning more than sixty (60) percent of the area median income (AMI). Pursuant to the respective Regulatory and Operating Agreements, a majority of the units ... must be “PHA-Assisted Units,” which are defined as a “dwelling unit in the Development designated as such by Owner and operated and maintained as a ‘public housing’ unit in accordance with Public Housing Requirements.”
Further, the Regulatory and Operating Agreements (“Agreements”) recognized that the plaintiffs would likely be unable to recoup their operating costs and thus HANO would subsidize the operation of the PHA-Assisted units; but if the plaintiffs made a profit in operating the PHA-Assisted Units, the Agreements required that the profits be deposited into an escrow for reserves to be used solely for the PHA-Assisted units. If the plaintiffs failed to comply with the Agreements, the ground leases automatically terminated vesting ownership of them in HANO. The court concluded that the units had been dedicated to a “public use, [to] clearly serve a public purpose and, thus are exempt from ad valorem taxes under” La. Const, art. VII, § 21.
Unlike Abundance Square Associates, we find, inter alia, a lack of evidence in the record before us establishing that any of the LLCs had appropriately declared and dedicated their property for public use clearly serving a public purpose. Moreover, the only evidence in support of any “public use” by the LLCs is the self-serving affidavits of Kathy Laborde, manager of the LLCs and president of GCHP, primarily attesting only to the fact that GCHP is tax-exempt under 26 U.S.C.A. § 501(c)(3) and therefore concluding the LLCs are exempt from ad [^valorem taxes.[12] Accordingly, we find Abundance Square Associates inapplicable to the facts in the case at bar.
In St. Bernard I, LLC, HANO (a public body) entered into a 99-year ground lease of land that it owned to St. Bernard I, *824 LLC (“SBI”). SBI constructed improvements thereon. For the obvious purpose of financing with tax-exempt municipal bonds that had a lower interest rate, SBI entered into agreements with the Industrial Development Board of the City of New Orleans, Louisiana, Inc. (“IDB”), another public entity. Under the financing arrangement, SBI conveyed ownership of the improvements to IDB; by subleases and sub-subleases IDB subleased the future improvements back to SBI; under the sublease SBI would pay rent to IDB. The assessor assessed the property finding ad valorem taxes were due; SBI paid the taxes under protest and sued for a refund claiming the improvements were tax-exempt. Finding that IDB’s arrangement with SBI was not a simulation[13] and the actions of IDB complied with the Municipal and Parish Industrial Development Board Act, La. R.S. 51:1151, et seq., and more specifically, La. R.S. 51:1160, the court held that one need look no further than the four corners of the agreements between SBI and IDB and that the immovable property was exempt from ad va-lorem taxes.
l12In the case at bar, we find no evidence that GCHP or the LLCs have entered into any agreement with an municipal or parish industrial development board to bring them within the purview of La. R.S. 51:1151, et seq., and thus potentially exempt from ad valorem taxation of their immovable property. St. Bernard I, LLC is distinguishable and inapplicable.
“Under the general rules of statutory construction, courts begin with the premise that legislation is the solemn expression of legislative will and, therefore, the interpretation of a law involves, primarily, the search for the legislature’s intent.” Falgout v. Dealers Truck Equipment Co., 98-3150 (La.10/19/99), 748 So.2d 399, 401, citing La. C.C. art. 1; Fontenot v. Chevron U.S.A. Inc., 95-1425 p. 6 (La.7/2/96), 676 So.2d 557, 562. The same applies to constitutional construction being the solemn, even sovereign, expression of the drafter’s intent. Intent, however, is not the appropriate starting point for statutory, i.e., constitutional, interpretation. Rather, the starting point is the language of the constitutional itself. See State Civil Serv. Commission v. Department of Public Safety Director, 03-1072, p. 5 (La.4/14/04), 873 So.2d 636, 640. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law must be applied as written and no further interpretation may be made in search of the intent of the di'after. La. C.C. art. 9. It is well-established that exemptions from taxation are strictly construed against the taxpayer claiming the benefit thereof and must be clearly, unequivocally, and affirmatively established by the taxpayer. See Sherwood Forest Country Club v. Litchfield, 08-0194, p. 6 (La.12/19/08), 998 So.2d 56, 61, citing Archer Daniels Midland Co. v. Parish School Board of Parish of St. Charles, 01-0511, p. 11 (La.11/28/01), 802 So.2d 1270, 1278.
We acknowledge that statutorily GCHP is exempt from income tax, both state and federal. La. R.S. 47:121(13); 26 U.S.C.A. §§ 170 and 501. Further, Internal Revenue Service regulations allow GCHP to file a consolidated income tax return for itself and its wholly owned limited liability companies such as the LLCs. That does not, however, make the separately organized limited liability companies (the LLCs ) exempt from all taxes and especially ad valo-rem property taxes.
Finding triable issues exist concerning the lack of an existing tax exemption declaration for the LLCs, it is unnecessary to *825 analyze whether the LLCs were effectively organized and operated exclusively for charitable purposes, and if any transaction in 2011 involving low-income housing tax credits among them (or even just one of them) and GCHP might have had an impact on their alleged tax-exempt status during tax year 2010. We thus find from the record before us that the LLCs are not entitled to tax-exempt status for purposes of ad valorem property taxes under La. Const, art. VII, § 21(B)(l)(a)(i), and therefore conclude that the evidence does not show that the LLCs are to be refunded ad valorem property taxes for the tax year 2010. Because (a) this matter comes to us on the trial court’s judgment granting the plaintiffs/appellees’ motion for summary judgment and (b) the appellants’ motion for summary judgment is not before us for review, we reverse [ uthe judgment in plaintiffs’ favor, and remand this matter to the trial court for further proceedings consistent with the views expressed herein.
REVERSED; REMANDED.

. Cross motions for summary judgment had been filed by the parties, that of the appellants being granted and that of the appellee denied; only the former is before us. Although the appellant assigns three errors on appeal, all assignments address the same issue, to-wit: Are ad valorem taxes owed by the co-appel-lees-limited liability companies? We address the issues herein as one.

. It is noted that GCHP owns many other Louisiana limited liability companies that operate in the same manner as the LLCs; however, we do not address the ad valorem property tax liability of those other limited liability companies.

. The appellant asserts that GCHP operates multiple entities, some for profit and others for purchasing, holding, developing, and selling immovables.

. At the time that the constitutional provision came effective, an "association” was defined by the then current edition of Black's Law Dictionary (4th Ed.) as:
The act of a number of persons in uniting together for some special purpose or business. The persons so joining. It is a word of vague meaning used to indicate a collection of persons who have joined together for a certain object. An unincorporated society; a body of persons united and acting together without a charter, but upon the methods and forms used by incorporated bodies for prosecution of some common enterprise. It is not a legal entity separate from the persons who compose it. [Citations omitted.]
By this definition, each of the LLCs herein is not an association on multiple grounds, e.g., each has but one member, not a group of members; although the articles of organization of the LLCs are similar to articles of incorporation and a form of charter blessed by state law, each is not incorporated; unlike an association, a limited liability company is a legal entity separate from its members (see La. R.S. 12:1304 C; La. R.S. 12:1320).

. By implication, a foreign nonprofit corporation such as GCHP is treated for Louisiana taxation purposes the same as a Louisiana incorporated nonprofit corporation. See La. R.S. 12:247.1.

. Cf., Cathcart v. Magruder, 06-0986, pp. 11-12 (La.App. 1 Cir. 5/4/07), 960 So.2d 1032, 1038.

. We find an absence of any evidence that the LLCs have directly obtained an individual tax-exempt status (qualified as an 26 U.S.C.A. § 501(c)(3) tax-exempt entity) from the Internal Revenue Service. Even if they had, an issue would remain as to whether they are exempt from ad valorem property taxes under La. Const, art. VII, § 21(B)(1) that references only a "corporation or association.” We do not presently address whether a limited liability company is an "association” under the provision, noting, however, that limited liability companies did not exist at the time the constitutional provision became effective on 1 January 1975; we know a limited liability company is not a "corporation.”

. We note that a nonprofit corporation is not generally exempt from paying all taxes, e.g., sales taxes.

. See Id.; New Orleans Towers Affordable Housing Corp., Inc. v. Kahn, 98-1240 to 98-1246 (La.App. 4 Cir. 12/29/98), 744 So.2d 50. In New Orleans Towers, New Towers Affordable Housing Corporation, Inc., the entity seeking tax-exempt status was a nonprofit corporation organized under La. R.S. 12:201, et seq., and not a limited liability company.

. We find La. R.S. 47:1708 inapplicable because it addresses exemption from ad valo-rem property taxes for rental housing for the "homeless.” We find no evidence that the LLCs’ lessees are homeless and that the LLCs and/or GCHP intend to lease the immovable properties to the homeless.

. In context, we understand these purposes mean only tort liability.

. Ms. Laborde asserted specifically that (1) GCHP-Jericho, L.L.C.'s immovable was, as of 1 January 2010 [the date taxes became due for calendar year 2010], raw land and that the land was intended to be developed "to provide affordable housing to-low income individuals and families; (2) GCHP-MLK, L.L.C.'s immovable property was "undeveloped, raw land” without attesting to any facts as to plans for same in the future; and (3) GCHP-Esplanade, L.L.C.'s immovable property was, as of 1 January 2010, "in pre-devel-opment stage” and "being developed into 42 units of affordable and supportive rental housing for low-income individuals with disabilities and low-income workers.” Nowhere does evidence exist to support that as of 1 January 2010 any of the LLCs immovable property was appropriately dedicated f or a constitutionally protected ad valorem tax exemption.

. See La. C.C. arts.2025, et seq.