| | | |
|---|---|---|
| **NOHC, INC.** | * | **NO. 2022-CA-0248** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **ERROLL G. WILLIAMS,** | * | |
| **ASSESSOR, PARISH OF** | | **FOURTH CIRCUIT** |
| **ORLEANS; NORMAN WHITE,** | * | |
| **DIRECTOR OF FINANCE FOR** | | **STATE OF LOUISIANA** |
| **THE CITY OF NEW** | * * * * * * * | |
| **ORLEANS; DEPARTMENT OF** | | |
| **FINANCE, BUREAU OF THE** | | |
| **TREASURY, CITY OF NEW** | | |
| **ORLEANS; CITY OF NEW** | | |
| **ORLEANS AND THE** | | |
| **LOUISIANA TAX** | | |
| **COMMISSION** | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-02373, DIVISION "F-14"
Honorable Jennifer M. Medley, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Dale N. Atkins, Judge Pro Tempore James F. McKay III)

Scott R. Huete
ELKINS, PLC
201 St. Charles Avenue, Suite 4400
New Orleans, LA 70170

 COUNSEL FOR PLAINTIFF/APPELLEE, NOHC, Inc.

John J. Weiler
Reese F. Williamson
WEILER & REES, LLC
909 Poydras Street, Suite 1250
New Orleans, LA 70112

 COUNSEL FOR DEFENDANT/APPELLANT, Erroll G. Williams, Assessor, Parish of Orleans

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH
INSTRUCTIONS
December 6, 2022**

DNA

TFL

JFM

Appellant, Erroll G. Williams, in his capacity as Assessor for the Parish of Orleans ("Assessor Williams"), appeals the trial court's March 8, 2022 judgment, which denied his Motion for Summary Judgment and granted the Motion for Summary Judgment filed by Appellee, NOHC, Inc. ("NOHC"). Assessor Williams also filed Exceptions of Prescription and No Cause of Action with this Court; and NOHC filed a Motion to Strike Assessor Williams' Reply Brief to this Court. For the following reasons, we affirm the trial court's denial of Assessor Williams' Motion for Summary Judgment; reverse the trial court's granting of NOHC's Motion for Summary Judgment; deny Assessor Williams' Exceptions of Prescription and No Cause of Action; deny NOHC's Motion to Strike; and remand this case for further proceedings consistent with this Opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

NOHC is an Internal Revenue Code ("IRC") Section 501(c)(3) nonprofit corporation that has received tax exemptions for federal and state income tax purposes. It owns and operates the Healing Center, which is located at 2372 St. Claude Avenue in New Orleans. A for-profit corporation known as St. Claude/St. Roch Revitalization, LLC ("SC/SRR"), formerly owned the Healing Center

1

building and used tax credits under the New Market Tax Credit (NMTC) Program, which is designed for low-income areas, to renovate the building and open the Healing Center. In 2018, SC/SRR donated the Healing Center to NOHC, thereby transferring SC/SRR's outstanding debt incurred in the renovation of the building. At the Healing Center, NOHC provides space for various community activities; and in 2020 NOHC also leased space to various commercial entities, such as a restaurant, a barber shop, a food co-op, a yoga studio, a dance studio, an engineering firm, a radio station, and a bar.

### *NOHC'S REQUEST FOR AN EXEMPTION*

In August 2019, NOHC obtained a Section 501(c)(3) designation from the Internal Revenue Service ("IRS"), exempting it from the payment of federal income taxes. NOHC then applied to the Orleans Parish Assessor's Office for an exemption from the payment of its 2020 ad valorem taxes under La. Const. art. VII, § 21(B)(1)(a)(i) (1974) and listed the "Address of Property to be Exempted" as 2372 St. Claude Avenue, i.e., the Healing Center. Assessor Williams denied this exemption request on December 16, 2019, and he sent a tax bill, which indicated that NOHC's taxes would become delinquent on February 1, 2020. On February 12, 2020, NOHC paid its taxes under protest. Additionally, on March 10, 2020, NOHC filed suit in Orleans Civil District Court, seeking reimbursement of the amount of taxes it paid in protest; and Assessor Williams filed his answer on July 15, 2020.

### *MOTIONS FOR SUMMARY JUDGMENT*

Thereafter, on October 12, 2021, NOHC filed a Motion for Summary Judgment, wherein NOHC argued that Assessor Williams incorrectly rejected its exemption request because "the Healing Center is a 501(c)(3) non-profit

corporation and, as a result, all property owned by the Healing Center is exempt from ad valorem property [taxation]." Assessor Williams responded with his own Motion for Summary Judgment on January 21, 2022, wherein he argued that the Healing Center was not entitled to the exemption "because NOHC (the entity) is not organized or operated exclusively for an exempt purpose." Further, Assessor Williams asserted that the Healing Center did not qualify for the exemption because it "is leased to tenants for a wide variety of commercial uses unrelated to NOHC's exempt purpose" and listed these uses as including a fitness center, a sandwich store, a flower shop, a barber shop, a bar, a veterinarian office, an engineering firm, a yoga studio, a grocery store, a bank, a law office, and a radio station.

## *MARCH 8, 2022 JUDGMENT*

On February 23, 2022, the trial court held a hearing on the Motions for Summary Judgment. At the close of the hearing, the trial court denied Assessor Williams' Motion for Summary Judgment and granted NOHC's Motion for Summary Judgment. Subsequently, the trial court signed a written judgment on March 8, 2022, which provided, in pertinent part:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Assessor['s] Motion be and hereby is **DENIED**.
>
> **IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED** that . . . NOHC['s] Motion be and hereby is **GRANTED**, finding that the property owned by NOHC and located at 237[2] St. Claude Avenue, New Orleans, Louisiana, 70117 ("Property") is exempt from ad valorem property taxes under Article VII, Section 21 of the Louisiana Constitution of 1974.

Assessor Williams' timely appeal of the judgment follows.

**I.** ***ASSESSOR WILLIAMS' EXCEPTIONS OF PRESCRIPTION AND NO CAUSE OF ACTION***

Assessor Williams filed Exceptions of Prescription and No Cause of Action with this Court. Because any finding of merit regarding these exceptions would result in dismissal of the lawsuit, we address them first.

In urging his Exception of No Cause of Action, Assessor Williams contends that "[u]nder Louisiana law, to maintain a cause of action under La. R.S. § 47:2134(C), NOHC must have timely paid its disputed . . . Orleans Parish ad valorem taxes under protest by January 31, 2020." He asserts that NOHC's payment of its taxes on the Healing Center under protest on February 12, 2022, was not timely, thus rendering NOHC without a cause of action. In arguing his Exception of Prescription, Assessor Williams again contends that NOHC failed to pay its taxes under protest timely, thereby prescribing any claims that NOHC may have had.

Assessor Williams asserts that ad valorem taxes in Orleans Parish are due on January 31 and become delinquent on February 1 of the year in which they are due per La. R.S. 47:1997(B). In addition, he contends that La. R.S. 47:2134(B)(3)(b) provides that any challenge to the denial of an exemption must name the assessor for the parish where the property is located as a party to any suit and that La. R.S. 47:2134(C)(1) further provides that the challenger must timely pay the disputed portion of the assessed taxes under protest.

In its Opposition, NOHC disputes Assessor Williams' claim that it did not timely pay its taxes under protest, arguing (1) Assessor Williams admitted in his answer to the suit that the taxes were timely paid under protest, thus constituting a

judicial admission of the payment's timeliness; (2) the payment was timely because in 2020, the City of New Orleans had extended the payment deadline to February 14; and (3) NOHC detrimentally relied on this extension, and the doctrine of *contra non valentem* should apply to extend the due date. NOHC also argues that because Assessor Williams does not collect the taxes for the City of New Orleans, he has no standing to raise the exceptions.

## II. *PRINCIPLES APPLICABLE TO AN EXCEPTION OF PRESCRIPTION*

A party may raise an exception of prescription on appeal if the case has not yet been submitted for decision, and if there is proof in the record to determine its merits; if not, the court may remand the issue for determination. *See* La. C.C.P. art. 2163; *Walker v. AMID/Metro P'ship, LLC*, 2012-0285, p. 5 (La. App. 4 Cir 1/16/13), 109 So.3d 35, 39 (citing La. C.C.P. art. 2163; *Cameron v. Delta Plumbing*, 2007-0672, p. 5 (La. App. 4 Cir. 2/13/08), 976 So.2d 343, 346). An exception of prescription is designed to stop the prosecution of stale claims. *See Prevo v. State ex rel. Dep't of Pub. Safety & Corr. Div. of Prob. & Parole*, 2015-0823, p. 4 (La. 11/20/15), 187 So.3d 395, 398 (citing *Wells v. Zadeck*, 2011-1232, p. 7 (La. 3/30/12), 89 So.3d 1145, 1149). The party raising the exception bears the burden of proof, unless it is evident on the face of the proceedings that the claim has prescribed, at which point the burden shifts to the plaintiff to show that the matter has not prescribed. *Id.* (citing *Campo v. Correa*, 2001-2707, p. 7 (La. 6/21/02), 828 So.2d 502, 508; *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So.2d 1383, 1386 (La.1993)).

5

## III.   *PRINCIPLES APPLICABLE TO AN EXCEPTION OF NO CAUSE OF ACTION*

Like the exception of prescription, a party may raise an exception of no cause of action on appeal if the case has not yet been submitted for decision, and if there is proof in the record to determine its merits. La. C.C.P. art. 2163. *See also Murphy Oil Corp. v. Gonzales*, 316 So.2d 175, 177 (La. App. 4 Cir. 1975); *Ross v. Justice*, 229 So.2d 756, 758 (La. App. 3 Cir. 1969). When considering an exception of no cause of action, a court must only look to the face of the petition, any supplement, and any attached documents to determine if the law affords a remedy and if the plaintiff has alleged sufficient facts to support a cause of action. *Henderson v. State Farm Mut. Auto. Ins. Co.*, 2021-0654, p. 5 (La. App. 4 Cir. 12/17/21), 335 So.3d 349, 353 (quoting *Green v. Garcia-Victor*, 2017-0695, p. 5 (La. App. 4 Cir. 5/16/18), 248 So.3d 449, 453). While any doubts as to proof are to be resolved in favor of the plaintiff, "[l]egal conclusions asserted as facts are not considered well-pled factual allegations for purposes of an exception of no cause of action." *Id.* at pp. 5-6, 335 So.3d at 353 (citing *First Natchez Bank v. Malarcher-Damare Co.*, 135 La. 295, 65 So. 270, 271 (1914); *Kyle v. Civil Serv. Comm'n*, 588 So.2d 1154, 1159 (La. App. 1st Cir. 1991)).

Because both parties' arguments regarding the exceptions hinge on the timeliness of the payment, this Court will first determine whether NOHC timely paid its taxes under protest in deciding whether to sustain or deny Assessor Williams' exceptions.

## IV.   *WHETHER NOHC TIMELY PAID ITS TAXES UNDER PROTEST*

In the instant case, a review of the record shows that there is no dispute that NOHC paid its taxes under protest on February 12, 2020, which is past the time

6

provided in La. R.S. 47:1997(B). We consider the parties' arguments as to whether this constitutes timely payment under the circumstances presented herein.

**A.** *Standing*

As discussed, NOHC contends that because Assessor Williams does not collect the taxes for the City of New Orleans, he has no standing to raise the exceptions. However, this Court has previously held that the assessor is a proper party to bring suit for the collection of taxes. *See generally Williams v. Belle of Orleans, LLC*, 2003-1203 (La. App. 4 Cir. 12/1/04), 890 So.2d 670. Thus, we find that Assessor Williams is a necessary party to any suit for review of a denial of an exemption of ad valorem tax payments. Because Assessor Williams was a necessary party to the suit, he has standing to file his Exceptions of Prescription and No Cause of Action.

**B.** *Alleged Judicial Admission*

With respect to NOHC's argument regarding the alleged judicial admission by Assessor Williams, NOHC asserted in paragraph 14 of its petition that it "took the necessary steps to timely pay said Tax Bill under protest pursuant to La. R.S. 47:2134" and that Assessor Williams admitted those allegations in his answer. NOHC asserts that this was a judicial admission of the timeliness of NOHC's payment under protest and that Assessor Williams cannot now allege untimeliness. In support, NOHC cites La. C.C. art. 1853, which defines a judicial confession as "a declaration made by a party in a judicial proceeding" that "constitutes full proof against the party who made it." In the cases cited by NOHC in support of its argument, the "confession" involved matters of fact, not conclusions of law. *See Traina, Inc. v. Sunshine Plaza, Inc.*, 2003-1003 (La. 12/3/03), 861 So.2d 156; *Cheatham v. City of New Orleans*, 378 So.2d 369 (La. 1979).

7

However, as noted by Assessor Williams in his reply to NOHC's Opposition, conclusions of law cannot form the basis of a judicial admission. In support, he cites *Howard Trucking Co. v. Stassi*, wherein the Louisiana Supreme Court found that a party's "admission" that the agreements between the parties were leases, not contracts, could not be a judicial admission because it was a legal conclusion, not a confession of fact. 485 So.2d 915, 918 (La. 1986). Therein, the Louisiana Supreme Court further stated that "[a] judicial admission or confession is the express acknowledgment of adverse fact." *Id.* (citing *Crawford v. Deshotels*, 359 So.2d 118, 122 (La. 1978)). "Questions of law cannot be confessed or admitted . . . ." *Id. See also 2802 Magazine Street v. Eggspressions of N. Am., L.L.C.*, 2019-0085, p. 4 (La. App. 4 Cir. 5/22/19), 274 So.3d 1279, 1282 (holding that prescription is a question of law); *Robert v. Robert Mgmt. Co.*, 2011-0406, p. 3 (La. App. 4 Cir. 12/7/11), 82 So.3d 396, 398 (holding that interpretation of a statute is a question of law).

Likewise, in the instant case, the issue of the timeliness of NOHC's payment is not a question of fact, but rather a question of law. Thus, we agree with Assessor Williams that his answer does not constitute a judicial admission; therefore, we find that he was able to question the timeliness of NOHC's payment.

**C.** ***Alleged Extension of the Deadline to Pay Taxes under Protest***

NOHC next argues that its payment under protest was timely because the City of New Orleans extended the deadline for making ad valorem payments from January 31, 2020, to February 14, 2020, due to problems caused by a cyberattack that the City experienced in December 2019. Further, NOHC argues that the extension was a necessary response to the cyberattack, without which the City's ability to exercise its governmental powers would have been hampered. NOHC

maintains that the time limit for paying taxes under protest set forth in La. R.S.47:2134 cannot be used to limit the City from extending the deadline for payment under protest.

Louisiana Revised Statutes 47:2134 provides that a person challenging an ad valorem tax is to timely pay the disputed amount under protest. In support, NOHC cites La. Const. art. VI, § 6, which provides that "[t]he legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter." Noting that New Orleans operates under a Home Rule Charter, NOHC contends that the legislature cannot impinge upon the City's ability to extend the deadline for the payment of taxes, even under protest. It cites Home Rule Charter art. II, Section 2-101(4), which provides that the City has the authority to adopt its regulations "pertaining to its local affairs, property and government, which are necessary or proper in the legitimate exercise of its corporate powers and municipal functions."

Assessor Williams disputes the City's ability to extend the time limitation of La. R.S. 47:1997(B), which states, in pertinent part, that "[t]he collection of taxes shall begin on the first day of January of the year 1972, and for each year thereafter, for which such taxes are levied. Beginning with the year 1972, the entire amount of such taxes shall become delinquent on the first day of February . . . ." Assessor Williams points to La. R.S. 47:2130(B), which specifically provides for "the postponement of the payment of ad valorem taxes" in case of public calamity. That statute requires that an emergency be declared by the governor or the parish president via the Louisiana Homeland Security & Emergency Assistance & Disaster Act, but only in cases of disaster caused by "overflow, general

9

conflagration, general crop destruction, or other public calamity . . . ." La. R.S. 47:2130(B). Only under these circumstances may the tax debtor request a "postponement of the payment of ad valorem taxes" on property located in the designated geographical area. *Id.*

We agree with Assessor Williams. There was no such declaration of a calamity that would allow NOHC to request a postponement of the payment of its ad valorem taxes under protest or to permit the City or the Legislature to declare an extension under La. Const. art. VII, § 25(F).[1] Moreover, as noted by the Louisiana Supreme Court in *New Orleans Campaign for a Living Wage*, the City's powers are limited by the Louisiana Constitution, the laws permitted by the Louisiana Constitution, and the home rule charter. 2002-0991, p. 7 (La. 9/4/02), 825 So.2d 1098, 1103 (quoting *Morial v. Smith & Wesson Corp.*, 2000-1132, p. 16 (La.4/3/01), 785 So.2d 1, 14). While the City could extend the time to pay taxes without penalties, costs, and assessments, it could not extend the time for paying under protest as provided by the Legislature in La. R.S. 47:1997(B).

We acknowledge NOHC's counterargument that because La. R.S. 47:2134 itself does not provide a time limitation for paying ad valorem taxes under protest (instead stating "[a] taxpayer . . . .shall timely pay the disputed amount of tax due . . . ."), the City was free to set any time limitation it saw fit. However, La. R.S. 47:2134 and La. R.S. 47:1997(B) must be read in tandem. *See Lindy Dev., L.L.C. v. Degan*, 2003-1078, p. 8 (La. App. 4 Cir. 4/21/04), 874 So.2d 252, 258 (wherein

---

[1] Louisiana Constitution Article VII, § 25(F) provides, in part, that "The legislature may postpone the payment of taxes, but only in cases of overflow, general conflagration, general crop destruction, or other public calamity, and may provide for the levying, assessing, and collecting of such postponed taxes."

this Court held that La. R.S. 47:1997 and the predecessor to La. R.S. 47:2134 must be read together).[2]

**D.    *Contra Non Valentem***

NOHC also argues that its alleged untimeliness should not bar this suit because it detrimentally relied upon the City's extension of the due date for paying under protest. Additionally, NOHC argues that the doctrine of *contra non valentem* should apply to excuse its untimeliness.

The doctrine of *contra non valentem* ("doctrine") is an equitable doctrine that "no one is required to exercise a right when it is impossible for him or her to do so." *Prevo*, 2015-0823, p. 5, 187 So.3d at 398.  It is based on the premise that prescription does not run if a plaintiff cannot bring suit.  *Ramos v. Le*, 2018-0677, p. 5 (La. App. 4 Cir. 12/12/18), 261 So.3d 959, 963 (quoting *Corsey v. State, Through Dep't of Corr.*, 375 So.2d 1319, 1321 (La. 1979); *Dominion Exploration & Prod., Inc. v. Waters*, 2007-0386, p. 10 (La. App. 4 Cir. 11/14/07), 972 So.2d 350, 358).  The doctrine applies in limited circumstances in which prescription is suspended because the plaintiff essentially was prevented from enforcing his rights not due to his own will. *Id*. The doctrine "must be strictly construed" and "applie[d] only in 'exceptional circumstances.'" *Id.* (quoting *Harsh v. Calogero*, 615 So.2d 420, 422 (La. App. 4th Cir. 1993); *Renfroe v. State ex rel. Dep't of Transp. & Dev.*, 2001-1646, p. 9 (La. 2/26/02), 809 So.2d 947, 953).

---

[2] NOHC also argues that the Legislature anticipated that local authorities would extend tax payment dates, citing La. R.S. 47:2127(A), which provides that "[t]axes assessed shall be due in that calendar year as soon as the tax roll is delivered to the tax collector, and they shall be paid on or before December thirty-first in each respective year." However, this time limitation does not apply to Orleans Parish, which is specifically governed by La. R.S. 47:1997(B). We further note that NOHC does not argue that La. R.S. 47:1997 is an unconstitutional infringement on the City's rights under the Home Rule Charter.

The Louisiana Supreme Court discussed the doctrine in *Marin v. Exxon Mobil Corp.*, wherein it recognized four situations to which the doctrine applies: (1) where there is a legal cause that prevented the court from taking cognizance or acting on the plaintiff's action; (2) where there is a condition coupled with the contract or connected to the proceedings which prevented the creditor from suing or acting; (3) where the debtor has done some act that effectively prevented the creditor from availing himself of a cause of action; or (4) where the cause of action was neither known nor reasonably could be known by the plaintiff, even though it was not induced by the defendant. 2009-2368, p. 12 (La. 10/19/10), 48 So.3d 234, 245 (quoting *Plaquemines Par. Comm'n Counsel v. Delta Dev. Co.*, 502 So.2d 1034, 1054-55 (La. 1987)). With respect to the third category, the Louisiana Supreme Court in *Marin* set forth three additional requirements: (a) the defendant's conduct must rise to the level of concealment, misrepresentation, fraud, or ill-practice; (b) the defendant's action must have effectively prevented the plaintiff from pursuing his cause of action; and (c) the plaintiff's reliance must have been reasonable. *Id.* (citing *Fontenot v. ABC Ins. Co.*, 1995-1707, p. 5 (La. 6/7/96), 674 So.2d 960, 963; *Hendrick v. ABC Ins. Co.*, 2000-2403, 2349, pp. 12-13 (La. 5/15/01), 787 So.2d 283, 290, 293; *Jordan v. Emp. Transfer Corp.*, 509 So.2d 420, 423 (La. 1987); *Allstate Ins. Co. v. Fred's Inc.*, 2009-2275 (La. 1/29/10), 25 So.3d 821).

Here, NOHC argues that it is entitled to application of the doctrine under categories two, three, and four. With respect to the second category that there were conditions that prevented NOHC from timely paying its taxes under protest, NOHC asserts that the City's extension prevented NOHC from paying on time because the City's action lulled NOHC into believing that its February 12, 2020

payment under protest would be considered timely. That is, NOHC states that the City did not inform NOHC that the extension did not apply to payments under protest. However, NOHC does not explain how this prevented NOHC from paying under protest by January 31, 2020. In fact, NOHC admits that it could have paid the taxes under protest if it knew they really were due on January 31, 2020. We also note that the check written for NOHC's taxes was dated January 29, 2020; but the check and the protest were not filed until February 12, 2020. Considering the foregoing, we find that NOHC has failed to show that the City's action prevented NOHC from timely paying its taxes under protest.

We also find that NOHC has failed to demonstrate application of category three, which applies when the other party has committed some act that effectively prevented the mover from availing itself of its cause of action. In support of its claim, NOHC asserts that Assessor Williams did not prove whether he tacitly or directly participated in the City's decision to extend the time for paying taxes to February 14, 2020; but NOHC points to no authority to show that Assessor Williams had the burden of proving this. Rather, because NOHC's petition showed on its face that the claim had prescribed, NOHC had the burden of proof, not Assessor Williams. *See Prevo*, 2015-0823, p. 4, 187 So.3d at 398 (holding that "[o]rdinarily, the exceptor bears the burden of proof at the trial of the peremptory exception" unless "prescription is evident on the face of the pleadings," in which case "the burden shifts to the plaintiff to show the action has not prescribed" (citing *Campo*, 2001-2707, p. 7, 828 So.2d at 508; *Williams*, 611 So.2d at 1386)).

As for the fourth category of the doctrine that the cause of action was neither known nor reasonably knowable by the plaintiff even though this lack of knowledge was not caused by the defendant, NOHC asserts that it did not

reasonably know that the extension did not apply to payments made under protest. However, in *Marin*, the Louisiana Supreme Court explained that the fourth category of the doctrine "will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." 2009-2368, p. 13, 48 So.3d at 246 (quoting *Renfroe v. State ex rel. Dep't of Transp. & Dev.*, 2001-1646, p. 10 (La. 2/26/02), 809 So.2d 947, 953). Additionally, the *Marin* court stated that "prescription runs from the date on which [a plaintiff] first suffered actual and appreciable damage, . . . even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage . . . " *Id.* at 13-14, 48 So.3d at 246 (quoting *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992)). Here, Assessor Williams denied NOHC's exemption request on December 16, 2019, and thereafter sent a tax bill that indicated that NOHC's taxes would become delinquent on February 1, 2020. Thus, NOHC first learned of its potential cause of action on December 16, 2019, and has not shown that it was prevented from paying its taxes under protest by January 31, 2020. *See Colón v. Dillard Univ.*, No. 16-1819, 2016 WL 4593770, at *4 (E.D. La. Sept. 2, 2016) (holding that the doctrine did not apply to bar prescription in an equal employment matter because "learning of one's own termination does give rise to the knowledge of a cause of action and starts the proverbial clock's ticking" (quoting *Eastin v. Entergy Corp.*, 2003-1030, p. 9 (La. 2/6/04), 865 So.2d 49, 56)).

**E.** *Detrimental Reliance*

In the alternative, NOHC asserts that it relied to its detriment on the extension that the City issued for payment of taxes. In support, NOHC cites La. C.C. art. 1967, which provides, in pertinent part:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

NOHC asserts that it relied on the extended deadline to its detriment. Further, NOHC maintains that it would have paid its taxes under protest by January 31, 2020, if it had known that the City's extension did not include payments under protest.

In *Suire v. Lafayette City-Parish Consolidated Government*, the Louisiana Supreme Court stated that detrimental reliance applies to "prevent injustice by barring a party from taking a position that is contrary to his prior acts, admissions, representations, or silence." 2004-1459, 1460, 1466, p. 31 (La. 4/12/05), 907 So.2d 37, 59 (quoting *Babkow v. Morris Bart, P.L.C.*, 1998-0256, p. 7 (La. App. 4 Cir. 12/16/98), 726 So.2d 423, 427). In order for the doctrine of detrimental reliance ("detrimental reliance") to apply, the movant must show: (1) a representation by words or actions; (2) justifiable reliance on the representation; and (3) reliance on the change was detrimental to the movant. *Id.* (citing *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.*, 2003-1662, p. 18 (La. App. 4 Cir. 3/17/04), 871 So.2d 380, 393). In *MR Pittman Group, LLC v. Plaquemines Parish Government*, this Court noted that detrimental reliance is to be applied only in exceptional circumstances, stating that "[t]he ultimate issue is the *reasonableness* of the

plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct." 2015-0513, p. 12 (La. App. 4 Cir. 12/2/15), 182 So.3d 303, 310-11 (citing *Campo*, 2001-2707, p. 12, 828 So.2d at 511).

NOHC, in addition to untold numbers of citizens and entities, relied on the City's proclamation that the due date for ad valorem taxes was extended from January 31, 2020, to February 14, 2020. The fact that the City did not have the authority to extend the date does not change the nature of NOHC's good-faith reliance on that extension. Therefore, we find that the doctrine of detrimental reliance applies in this case. Based on this finding, we deny Assessor Williams' Exception of Prescription. Likewise, as his Exception of No Cause of Action is based on his claim that NOHC's cause of action against him had prescribed because NOHC did not timely pay its taxes under protest, we deny Assessor Williams' Exception of No Cause of Action as well.

## V. *NOHC's MOTION TO STRIKE ALL OR PART OF ASSESSOR WILLIAMS' REPLY BRIEF*

Prior to addressing Assessor Williams' assignments of error, we address another preliminary matter. In response to the Appellee Brief filed by NOHC, Assessor Williams filed a Reply Brief with this Court. Thereafter, NOHC filed a Motion to Strike, contending that Assessor Williams' Reply Brief should be stricken in part or in its entirety. NOHC raises four claims with respect to its motion:

    A.    Assessor Williams alleged in his Reply brief that NOHC committed perjury;

    B.    Assessor Williams' Reply Brief contains offensive expressions and insulting and discourteous criticisms of NOHC and its employees;

16

C.     Assessor Williams' Reply Brief contains negative inferences made as statements of fact that constitute blatant arguments outside of the record; and

D.     Assessor Williams' Reply Brief went beyond the scope of rebuttal of NOHC's appellee brief.

NOHC bases its arguments on Rule 2-12.2(C), Uniform Rules, Courts of Appeal,[3] which provides:

> The language used in the brief shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, or of any institution. Any violation of this Subsection shall subject the author, or authors, of the brief to punishment for contempt of court, and to having such brief returned.

We address each of NOHC's arguments in turn.

**A.     *Perjury***

First, NOHC argues that Assessor Williams' Reply Brief should be stricken because he alleged that NOHC and its employees committed perjury, which constitutes a criminal offense prohibited by La. R.S. 14:123. In support, NOHC cites *Anzelmo v. Pelican Computer, LLC*, wherein the defendant alleged in his brief that the plaintiff and his witnesses either committed perjury or suborned perjury. 2004-464, p. 5 (La. App. 5 Cir. 12/28/04), 892 So.2d 659, 661.  The Louisiana Fifth Circuit Court of Appeal found that these allegations rose to the level of "vile, obscene, obnoxious, and offensive expressions" and struck those portions of the defendant's brief because "[t]he accusations made in [the] defendant's brief constitute[d] accusations of commissions of felonies." *Id.*

However, as countered by Assessor Williams in his Opposition to NOHC's Motion to Strike, he never alleged that NOHC or its employees committed perjury.

<hr />

[3] We note that Rule 2-12.2, Uniform Rules, Courts of Appeal, has been amended: as of January 1, 2023, the subject paragraph will become paragraph B.

Instead, he pointed to allegations that he termed false, inaccurate, erroneous, or incorrect. Assessor Williams notes that pointing out that an allegation is false does not constitute an allegation of perjury. In support, he cites *Farrar v. Whaley*, wherein the Louisiana Third Circuit Court of Appeal refused to strike a brief containing allegations that the plaintiff's evidence was "flimsy," "forge[d]," and "scripted." 2016-790, p. 4 (La. App. 3 Cir. 2/1/17), 211 So.3d 449, 453.

Our review of the Reply Brief reveals that Assessor Williams is correct that he did not accuse NOHC or its employees of perjury. His allegations of falsity or inaccuracy were proper in response to assertions made by NOHC. This claim by NOHC has no merit.

## B. *Offensive Expressions, Criticisms of NOHC and Its Employees*

NOHC next alleges that Assessor Williams' Reply Brief should be stricken because it contains offensive expressions and insulting and discourteous criticisms of NOHC and its employees. Specifically, NOHC contends that Assessor Williams accused businesses in the area of the Healing Center of being discriminatory on the basis of sexual orientation. NOHC asserts that Assessor Williams paraphrased its statements and improperly set forth negative implications of established facts. Further, NOHC alleges that Assessor Williams impugned the motives of its individual members, suggesting that NOHC desires its tax exemption to pay its executive director's salary and the debt it assumed when SC/SRR donated the Healing Center. NOHC further contends that Assessor Williams suggested that the executive director should lower her salary.

In response, Assessor Williams states that he did not accuse other businesses competing with NOHC's tenants of being discriminatory. He asserts that if anyone made that allegation, it was NOHC. In particular, Assessor Williams notes that

NOHC has consistently averred that one of its tenants at the Healing Center, a barber shop, furthered its business goals by providing services to LGBTQ+ customers who were not served by other hair salons in the area. Additionally, NOHC alleged in its Appellee Brief that Assessor Williams did not identify any other LGBTQ+ hair salon in the neighborhood. Therefore, the issue of "discrimination" was raised by NOHC, and Assessor Williams's Reply Brief pointed out that this allegation was false.

With respect to Assessor Williams' statements about NOHC's finances and the executive director's salary, he asserts that these statements were not outside the scope of replying to NOHC's Appellee Brief. He contends that NOHC repeatedly asserted that it operated at a loss and that his statements addressed NOHC's financial situation as set forth in the financial documents that NOHC produced. Assessor Williams asserts that he did not intentionally single out anyone who worked there but that the documents NOHC provided showed that it had only one paid employee. Assessor Williams maintains that his argument as to NOHC's financial state, which NOHC made an issue, included this person's salary. Considering the foregoing, we find that Assessor Williams' statements do not constitute a basis upon which to strike his Reply Brief.

C.  *Negative Inferences Made as Statements of Fact*

Third, NOHC asserts that this Court should strike Assessor Williams' Reply Brief because it contains statements of fact that are really negative inferences, including "blatant arguments" that are outside of the record. In particular, NOHC refers to Assessor Williams' statement that NOHC had no signed statements from its tenants, which it supposedly used as a basis for showing that it vetted its tenants to ensure that they abided by NOHC's goals. NOHC also points to Assessor

Williams' inference that NOHC did not vet the tenants it inherited from the Healing Center's previous owner. However, as noted by Assessor Williams in his Opposition to the Motion to Strike, NOHC objects to statements that pointed out things that NOHC failed to produce to show it is eligible for the tax exemption. In addition, contrary to NOHC's arguments about Assessor Williams' statements regarding similar businesses in the area, these statements are not beyond the scope of the record because NOHC itself insisted that its tenants provided services not addressed in the area. As stated by Assessor Williams, it is permissible for him to point to a lack of evidence on NOHC's part. Indeed, it is his burden under La. C.C.P. art. 966(D)(1) in connection with his motion for summary judgment.[4] Thus, we find that this claim provides no basis for striking Assessor Williams' Reply Brief.

**D.    *Scope of Assessor Williams' Reply Brief***

Lastly, NOHC argues that this Court should strike Assessor Williams' Reply Brief because it exceeded the scope of rebuttal, i.e., the rebuttal of points raised in NOHC's Appellee Brief. Specifically, NOHC notes that Assessor Williams listed the names of the Healing Center's tenants, which were not named in NOHC's

---

[4] Louisiana Code of Civil Procedure Article 966(D)(1), which is discussed more fully throughout this Opinion, pertains to the burden of proof on a motion for summary judgment and states:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

20

Appellee Brief; presented mathematical suggestions on how NOHC could make a profit; and argued about the admissibility of information in an affidavit supplied by NOHC's executive director. NOHC argues that because it did not raise any of these issues in its Appellee Brief, Assessor Williams' arguments concerning these issues exceeded the scope of his Reply Brief and should thus be stricken.

However, we find that this claim has no merit. Assessor Williams' discussion of NOHC's tenants was designed to counter NOHC's claim that it carefully vetted all its tenants to ensure that the tenants furthered NOHC's charitable goals. As for Assessor Williams' discussion of NOHC's finances, NOHC made its finances an issue, arguing at some length about the fact that it did not earn a profit. Thus, Assessor Williams was entitled to address this issue. Finally, because NOHC's Appellee Brief raised the issue of the admissibility of portions of the executive director's affidavit, Assessor Williams' responsive comments were within the scope of rebuttal.

Because NOHC has shown no basis to strike any portion of Assessor Williams' brief, NOHC's Motion to Strike is denied. Next, we turn to Assessor Williams' assignments of error.

## DISCUSSION

## ASSIGNMENTS OF ERROR

On appeal, Assessor Williams raises the following assignments of error:

A. The [trial court] erred in granting NOHC's [Motion for Summary Judgment] and denying Assessor Williams' Cross-[Motion for Summary Judgment].

B. The [trial court] erred in accepting "*in toto*" all of NOHC's allegations of facts, evidence submitted in support and conclusions of law, and disregarding all of Assessor Williams' allegations of facts, evidence submitted in support and conclusions of law.

21

C.    The [trial court] failed to correctly apply the legal test to determine whether property is exempt from ad valorem taxation pursuant to La. Const. [a]rt. VII, § 21(B)(l)(a)(i).

D.    The [trial court] erred in summarily finding that NOHC and the [Healing Center] met the constitutional test set forth in La. Const. [a]rt. VII, § 21(B)(l)(a)(i), and that the [Healing Center] thus qualifies for an ad valorem tax exemption.

Assessor Williams contends in his assignments of error that the trial court erred in denying his Motion for Summary Judgment and in granting NOHC's Motion for Summary Judgment. In particular, Assessor Williams argues that NOHC failed to show through its Motion for Summary Judgment and attachments thereto that it was entitled to the exemption from paying ad valorem taxes pursuant to La. Const. art. VII, § 21(B)(1)(a)(i). Further, Assessor Williams asserts that his Motion for Summary Judgment proved this failure.

## I.    *SUMMARY JUDGMENT PRINCIPLES*

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id. See Citron v. Gentilly Carnival Club, Inc.*, 2014-1096, p. 10 (La. App. 4 Cir. 4/15/15), 165 So.3d 304, 310-11. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"An appellate court applies the *de novo* standard of review in examining the trial court's ruling on a motion for summary judgment and utilizes 'the same criteria that govern the trial court's determination of whether summary judgment is appropriate.'" *Jones v. Boot Bar & Grill, C. Napco, Inc.*, 2022-0154, p. 12 (La.

App. 4 Cir. 10/05/22), ___ So.3d ___, ___, 2022 WL 5110928, at *5 (quoting *Knox v. Elite Prot. Sols. & Willie's Chicken Shack, LLC*, 2021-0419, p. 9 (La. App. 4 Cir. 10/13/21), ___ So.3d ___, ___, 2021 WL 4771758, at *4). Accordingly, "appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.* (quoting *Hood v. Cotter*, 2008-0215, 0237, p. 9 (La. 12/2/08), 5 So.3d 819, 824).

On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). "The party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *Jones*, 2022-0154, p. 12, ___ So.3d at ___, 2022 WL 5110928, at *6 (citing *Suire*, 2004-1459, 1460, 1466, pp. 26-27, 907 So.2d at 56). Thereafter, "[i]f the movant satisfies the initial burden, the burden shifts to the party opposing summary judgment to present factual support sufficient to show he will be able to satisfy the evidentiary burden at trial." *Id.* at pp. 12-13, ___ So.3d at ___, 2022 WL 5110928, at *6. *See also La. High Sch. Athletics Ass'n, Inc. v. State*, 2012-1471, p. 18 (La. 1/29/13), 107 So.3d 583, 598.

"However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Jones*, 2022-0154, p. 13, ___ So.3d at ___, 2022 WL 5110928, at *6 (quoting *Knox*, 2021-0419, p. 9, ___ So.3d at ___, 2021 WL 4771758, at *5). Only after the motion has been made and properly supported does the burden shift

from the mover to the adverse party. *Id.* Subsequently, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). "The adverse party may not rely on mere allegations or denials to defeat a motion for summary judgment but must provide specific facts showing that a genuine issue remains for trial, and failure to do so will result in the rendering of the summary judgment." *Jones*, 2022-0154, p. 13, ___ So.3d at ___, 2022 WL 5110928, at *6 (citing La. C.C.P. art. 967(B)). Any supporting or opposing affidavits filed in connection with a motion for summary judgment must be based upon the affiant's personal knowledge. La. C.P.P. art. 967(A). "'If the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact' and summary judgment is appropriate." *Jones*, 2022-0154, p. 13, ___ So.3d at ___, 2022 WL 5110928, at *6 (quoting *Knox*, 2021-0419, pp. 9-10, ___ So.3d at ___, 2021 WL 4771758, at *5).

In considering a motion for summary judgment, the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent. *Id.* at p. 14, ___ So.3d at ___, 2022 WL 5110928, at *6 (citing *Citron*, 2014-1096, p. 12, 165 So.3d at 312-13).

"A genuine issue is a triable issue." *Id.* (quoting *Knox*, 2021-0419, p. 10, ___ So.3d at ___, 2021 WL 4771758, at *5). "More precisely, an issue is genuine if reasonable persons could disagree." *Id.* "However, 'if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue.'" *Id.* "A fact is material when its existence or non-existence may be

24

essential to the plaintiff's cause of action under the applicable theory of recovery." *Id.* "Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Id.* "Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case." *Id.*

## A.   *NOHC's Motion for Summary Judgment*

NOHC asserted in its Motion for Summary Judgment that it was entitled to an ad valorem tax exemption pursuant to La. Const. art. VII, § 21(B)(1)(a)(i) because it fit all of the criteria for eligibility. Louisiana Constitution Article VII, § 21(B)(1)(a)(i), provides:

> In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
>
> . . . .
>
> (B)(1)(a)(i) Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax[.]
>
> . . . .
>
> None of the property listed in Paragraph (B) shall be exempt if owned, operated, leased, or used for commercial purposes unrelated to the exempt purposes of the corporation or association.

As this Court noted in *Gulf Coast Housing Partnership, Inc. v. Bureau of the Treasury of City of New Orleans*, "[i]t is well-established that exemptions from taxation are construed against the taxpayer claiming the benefit thereof and must be clearly, unequivocally, and affirmatively established by the taxpayer." 2013-

25

0556, p. 12 (La. App. 4 Cir. 11/27/13), 129 So.3d 817, 824 (citing *Sherwood Forest Country Club v. Lichfield*, 2008-0194, p. 6 (La. 12/19/08), 998 So.2d 56, 61). *See also Whitten Found. v. Granger*, 2004-0934, p. 8 (La. App. 1 Cir. 11/3/06), 950 So.2d 720, 724 (citing *Archer Daniels Midland Co. v. Par. Sch. Bd. of the Par. of St. Charles*, 2001-0511, p. 11 (La.11/28/01), 802 So.2d 1270, 1278).

In order to qualify for an exemption under La. Const. art. VII, § 21(B)(1)(a)(i), the applicant must meet four requirements: (1) it must be a nonprofit corporation or organization; (2) no net earnings may inure to the benefit of any private shareholder or member; (3) the nonprofit must be exempt from federal or state income tax; and (4) the property cannot be owned, operated, leased, or used for any commercial purpose unrelated to the exempt purposes of the nonprofit. *Whitten*, 2004-0934, p. 8, 950 So.2d at 724. *See also* La. Const. art. VII, § 21(B).

For example, the plaintiff failed to show entitlement to the La. Const. art. VII, § 21(B)(1)(a)(i) exemption in *Whitten*. Therein, the plaintiff claimed it was a nonprofit tax-exempt organization organized and operated for "charitable" purposes to provide safe, decent, and sanitary rental housing to low- and moderate-income tenants. *Whitten*, 2004-0934, p. 3, 950 So.2d at 721. The plaintiff owned two buildings, and it stipulated that lower-income tenants occupied 30.5% of one of the units, while 88.6% of tenants in the second building were lower-income. *Id.* at pp. 3-4, 950 So.2d at 722. However, the plaintiff granted no rent reductions to lower-income tenants; and the rents were based on the size and type of the units and were comparable to others in the parish. *Id.* at p. 11, 950 So.2d at 726. The Louisiana First Circuit Court of Appeal concluded that the plaintiff failed to show that its use of the commercial property was exclusively related to its charitable

26

purposes listed in its application. *Id.* at p. 11, 950 So.2d at 727. In so concluding, the Louisiana First Circuit Court of Appeal noted that La. Const. art. VII, § 21(B)(1)(a)(i) "requires that the corporate owner must operate exclusively for the charitable purposes and that the property cannot be used for any commercial purpose unrelated to the exempt purposes of the corporation." *Id.*[5]

In its Motion for Summary Judgment, NOHC also asserted that it was a nonprofit corporation that was exempt from federal and state income taxes, having attained IRC Section 501(c)(3) status. NOHC contended that as stated in its Articles of Incorporation, its purpose was to provide "community, healing, education and charitable purposes including but not limited to, creating and providing affordable services with a focus on healing (physical, emotional and spiritual) and education opportunities, acting on its own behalf and in cooperative endeavors with other not for profit entities." NOHC stated that it vetted all tenants, which it referred to as "silos," to ensure that the goods and services provided by them would be in compliance with and supportive of NOHC's charitable purpose and to serve the community. Additionally, NOHC insisted that the tenants provided services not readily accessible to the community it served and that their goods or services all fit within NOHC's stated charitable purposes. NOHC also maintained that it reviewed all tenants before signing off on their leases and that each tenant was required to sign a copy of the NOHC "Credo,"[6] committing its business to

---

[5] *See also Ruston Hosp., Inc. v. Riser*, 191 So.2d 665 (La. App. 2nd Cir. 1966), (wherein the plaintiff remodeled a hospital and reopened it as a nursing home that took no charity patients but charged scheduled rates even to welfare patients. The plaintiff sought an exemption from taxation under a similar provision under the 1921 Louisiana Constitution. The Louisiana Second Circuit Court of Appeal held that the plaintiff failed to show that it qualified as a charity for exemption purposes.).

furthering the nonprofit's objectives. NOHC stated that rents were set at fair market rate, with no profit motive, but to cover the Healing Center's overhead: NOHC averred it and its members did not financially benefit from the rentals. NOHC also included a list and description of some of the Healing Center's tenants, as well as a list of events hosted at the Healing Center.

NOHC attached to its Motion for Summary Judgment the affidavit of Darlene Marcello ("Ms. Marcello"), NOHC's executive director, as well as copies of its application and attachments for its award of Section 501(c)(3) tax-exempt status. It included copies of: Assessor Williams' denial of its request for the exemption from ad valorem property taxes; the tax bill issued for the Healing Center; its payment under protest; and various financial documents showing a net loss of income.

In her affidavit, Ms. Marcello stated she was the executive director of NOHC. Ms. Marcello attested that her statements were based on her personal knowledge and her review of NOHC's books and records as maintained in the ordinary course of its business. She asserted that NOHC was a nonprofit corporation formed under Louisiana law and had been designated a 501(c)(3) charity by the IRS on August 15, 2019, stating that the application, supplements, documents, and award letter were attached to her affidavit. She also identified the

---

[6] NOHC asserts that its Credo states:

> We agree to work together, synergistically and holistically, and to create a center rooted in hospitality where neighbors are respected and members of the community are welcomed warmly . . . . Our governing principles are grounded in the spirit of collaborative, cooperative, consensus-driven decision-making. We strive to make decisions based in positivity and courage, rather than fear and negativity . . . . We are dedicated to creating a vibrant and harmonious community that honors diversity, strengthens cultural traditions, and seeks and celebrates common ground.

Act of Donation of Immovable Property dated April 30, 2018, that transferred the building housing the Healing Center from SC/SRR to NOHC, which was also attached to her affidavit. Ms. Marcello attested that the Healing Center had been renovated by SC/SRR, using tax credits through the NMTC Program, whose purpose was to encourage businesses to invest in low-income communities with limited access to financial resources and to spur economic development. She stated that SC/SRR had completed its seven-year commitment under the NMTC Program prior to transferring the property to NOHC, but that operations of the Healing Center remained the same by serving the surrounding low-income community.

Ms. Marcello set forth NOHC's descriptions of its charitable purpose used in both its Articles of Incorporation and its application for its 501(c)(3) status. She stated that all operations at the Healing Center are carefully and thoroughly vetted to ensure they are in compliance with NOHC's charitable purpose and to serve the community. She explained that the Healing Center is "uniquely structured to be able to simultaneously help, heal, and empower individuals and communities," serving its surrounding downtown neighborhoods "at the economic, social, environmental, physical/mental, and spiritual levels." To do so, Ms. Marcello attested that NOHC provides space to third-parties who supply services and resources not readily accessible to the nearby community. Ms. Marcello described the rented spaces as "silos" that allow the tenants to provide services and products that focus on "promoting physical, nutritional, emotional, intellectual, spiritual, economic, environmental, cultural, and civil well-being" of the community. She stated that each silo was designed to promote one or more of these goals. Further, Ms. Marcello attested that the Board of Directors reviews each potential tenant and signs off on every lease. She also attested that all tenants must sign a copy of

NOHC's Credo. She explained that rent is set by a third-party leasing agent at market value with no profit motive but includes a portion of overhead expenses. Ms. Marcello attested that no member of NOHC's organization receives profits from rents paid.

Additionally, Ms. Marcello listed the tenants NOHC had at the time of the assessment and what they provided, grouping them by the area of benefit to the community they served. She noted that some of these businesses closed during the COVID-19 pandemic and that the vacancies had not been re-rented. Ms. Marcello also provided a list of events that the Healing Center hosted that she described as fulfilling NOHC's objectives and purposes. She identified the Application for Exemption that NOHC filed with the Assessor's Office, as well as the letter of denial, the tax bill, and the payment in protest (all of which were also attached to her affidavit).

**B.** *Assessor Williams' Motion for Summary Judgment*

In his Motion for Summary Judgment, Assessor Williams argued that NOHC failed to show that it met the test for a tax exemption under La. Const. art. VII, § 21(B)(1)(a)(i). He noted that under the test, NOHC was required to prove six things: (1) NOHC owns the property for which it seeks the exemption; (2) NOHC was exclusively organized for a charitable purpose; (3) NOHC exclusively operates for a charitable purpose; (4) NOHC is exempt from paying federal and state income taxes; (5) NOHC's net earnings do not inure to its shareholders or members; and (6) NOHC's building is not owned, operated, leased, or used for any commercial purpose unrelated to its exempt purpose. Assessor Williams argued that NOHC failed to prove elements (2) and (3) above because it listed purposes in addition to those included in the exclusive list provided in La. Const. art. VII, §

30

21(B)(1)(a)(i). He also argued that NOHC failed to show element (6) because not all of the goods and services provided by its tenants were in furtherance of NOHC's stated exempt purpose. Assessor Williams stated that he rejected NOHC's application on the grounds that NOHC was not organized or operated exclusively for a purpose enumerated in La. Const. art. VII, § 21(B)(1)(a)(i) and NOHC did not show that all of its tenants engaged in business that was related to its exempt purpose.

In support of his Motion for Summary Judgment, Assessor Williams attached affidavits from himself; Thomas Sandoz ("Mr. Sandoz"), the director of the Commercial Appraisal Department for the Orleans Parish Assessor's Office; Tung Nguyen ("Mr. Nguyen"), a former tenant at the Healing Center; Keith Lavigne ("Mr. Lavigne"), an appraiser employed by the Assessor's Office; and Reese F. Williamson ("Mr. Williamson"), the attorney for the Orleans Parish Assessor (Mr. Williamson's affidavit stated that he had personal knowledge of all exhibits attached to Assessor Williams' Motion for Summary Judgment). Assessor Williams also attached copies of a memorandum from Mr. Lavigne to him concerning a January 7, 2022 analysis of businesses in the Marigny and Bywater neighborhoods that were comparable to the businesses that were tenants in the Healing Center; the December 31, 2019 Financial Statements and Independent Auditor's Report for NOHC; and Transcripts of the 1973 Louisiana Constitutional Convention concerning the enactment of La. Const. art. VII, § 21(B)(1)(a)(i).

## 1. Assessor Williams' Affidavit

In his affidavit, Assessor Williams identified the property at issue and described its tenants as a mixture of commercial tenants conducting various trades or businesses, which he termed as typical for a commercial building. Assessor

Williams stated that because this mix of tenants could be found in any commercial building, he denied NOHC's application for its exemption. Specifically, he stated that he "did not find that NOHC is organized or operates" the Healing Center "exclusively for any enumerated exempt purpose such as: religious, dedicated places of burial, charitable, health, welfare, fraternal or educational purposes." He noted that the rents and fees charged to the tenants were in the range of similar businesses in the area, and he opined that the tenants do not provide unique services or sell unique products not otherwise available in the area, contrary to NOHC's claim. Assessor Williams further pointed out that prior to NOHC's ownership of the Healing Center, these same tenants were providing the exact services or goods as when the Healing Center was owned by SC/SRR, a for-profit entity. He stated that NOHC and SC/SRR performed the same functions and offered leases to almost all of the same tenants. He explained that while SC/SRR owned the building, it paid the ad valorem taxes and did not seek an exemption.

### 2. Mr. Sandoz's Affidavit

Mr. Sandoz stated that he is a Louisiana State Certified Residential Real Estate Appraiser who is the Director of the Commercial Appraisal Department for the Orleans Parish Assessor's Office. He attested that he reviewed and analyzed the rents paid by the tenants at the Healing Center and then compared them to the current fair market value of rents reported for leased space in the surrounding neighborhoods. Mr. Sandoz stated that the Healing Center had 32,761 square feet of net rentable space, which computed to a total gross annual rent of $559,833. Further, Mr. Sandoz stated that rentals in the Healing Center ranged from $6 to $60 a square foot: omitting these outliers, he provided that the average cost was $17.09 per square foot. Additionally, Mr. Sandoz stated that tenants also paid a portion of

the Healing Center's overhead, based upon each tenant's percentage of the square footage it occupied. Adding in these costs, Mr. Sandoz calculated that the average rental rate was $23.58 per square foot. He further stated that the average range of rental for the area was $18-$22 per square foot.

Mr. Sandoz stated that he also analyzed the Healing Center's tenant list to determine if their services were unique to the neighborhood or if there were existing comparable businesses in the neighborhood. He identified his attached analysis. Mr. Sandoz stated that Mr. Lavigne, also a Louisiana State Certified Real Estate Appraiser who works for the Assessor's Office, helped him with his analysis through data collection and analysis, relevant market research, and verbal and electronic communication with involved parties.

## 3. Mr. Nguyen's Affidavit

Mr. Nguyen identified himself as a former tenant of the Healing Center. He explained that he operated the Em Trai Sandwich Company until Hurricane Ida in August 2021, which caused him to close. Mr. Nguyen stated that he became aware of the vacant area in the Healing Center when he saw a "for lease" sign, and he contacted the real estate agent to rent the property. He also stated that his company received no special break in rent: he paid $5000 a month in rent and $1500 for gas and electricity. Mr. Nguyen described the rental as a purely commercial transaction.

## 4. Mr. Lavigne's Affidavit

Mr. Lavigne stated that he is a Louisiana licensed Certified Residential Real Estate Appraiser who is employed by the Assessor's Office. In this capacity, Mr. Lavigne explained that he was asked to review the businesses in the Healing Center and in the surrounding neighborhood to see if the ones in the Healing

Center were unique to the area. Mr. Lavigne attested that he obtained a list of the Healing Center's tenants and documented his findings in a memo to Assessor Williams entitled "Analysis of Marigny and Bywater Neighborhood[s]." He stated that his study showed that there were many comparable businesses within a 1.25-mile radius of the Healing Center. Mr. Lavigne also described the St. Claude Avenue corridor as "a popular neighborhood that has experienced a continued influx in commercial and rental activity." He concluded that his analysis showed that within a 1.25-mile radius of the Healing Center were businesses that provided services or products similar to those that the Healing Center's tenants provided.

## II. *ASSESSOR WILLIAMS' ASSIGMENTS OF ERROR AS TO THE DENIAL OF HIS MOTION FOR SUMMARY JUDGMENT AND THE GRANTING OF NOHC'S MOTION FOR SUMMARY JUDGMENT*

In his brief to this Court, Assessor Williams reiterates the arguments he presented in his Motion for Summary Judgment. He recounts the history of the ownership of the Healing Center, noting that at least fourteen of the Healing Center's tenants in 2020 had begun their leases under SC/SRR's ownership of the building. Assessor Williams explains that NOHC's Articles of Incorporation lists NOHC's four main purposes as community, healing, educational, and charitable. He notes that NOHC's overall mission is to provide "healing services" to the community, and it characterized each lease as a type of "healing," including economic, social, environmental, physical, or spiritual healing. Further, Assessor Williams points out that NOHC identified four tenants that are nonprofits, but its pleadings either do not reference them or produced no documentation for them; and he contends that one was not a nonprofit as listed in NOHC's audited financials and audited report.

Assessor Williams explains that the Healing Center leased space to a fitness center, a sandwich shop, a barber shop, a veterinarian, an engineering firm, a yoga studio, a law firm, a radio station, a bar, a florist, and a credit union, each of which NOHC argues provides unique goods and services that are not readily accessible to the community and fits within NOHC's category of healing. Assessor Williams counters, however, that these goods and services are not unique. He points out with respect to the Healing Center's hair cutting service, which NOHC classified as "physical healing," that there were at least seven other hair cutting services within a one-mile radius. While NOHC classified its credit union tenant as "the sole provider of economic healing" for the neighborhood, Assessor Williams noted that there were six other financial institutions in the neighborhood, four of which are within walking distance. He disputes NOHC's claims of uniqueness as to its businesses' "physical healing" (a yoga studio, a group dance center, and a fitness center), noting there were seven others in the area; a physical therapy business, noting three others in the area; a co-op grocery store, noting five other grocery stores in the area; a sandwich shop ("nutritional healing"), noting four others on the same street; and a veterinarian, an engineering firm, and a florist ("environmental healing"), noting four pet care businesses, three engineering firms, and three plant stores/florists in the area. Assessor Williams also reiterates the average rental rate for tenants of the Healing Center.

Assessor Williams cites the standards for when a property owner is entitled to a La. Const. art. VII, § 21(B)(1)(a)(i) exemption and concludes that NOHC did not establish that it could meet these; thus, the trial court erred by denying his Motion for Summary Judgment and by granting NOHC's Motion for Summary Judgment. He breaks down his assignment into five arguments on the merit; his

35

sixth argument concerns the trial court's reliance on facts that he asserts were inadmissible. We combine the first three arguments for discussion, as well as the fourth and fifth.

1.  **NOHC failed to show it was organized exclusively for exempt purposes as listed in [La. Const. art. VII, § 21(B)(1)(a)(i)];**

2.  **NOHC failed to show and Assessor Williams proved [NOHC] was not operated exclusively for exempt purposes listed in [La. Const. art. VII, § 21(B)(1)(a)(i)]; and**

3.  **NOHC erroneously relied upon its income tax exempt status under IRC Section 501(c)(3) to show that it is entitled to a property tax exemption under La. Const. art. VII, § 21(B).**

As noted above, NOHC's Articles of Incorporation set forth that NOHC's four main purposes are community, healing, educational, and charitable. By contrast, the exclusive purposes allowed by La. Const. art. VII, § 21(B)(1)(a)(i) are for religious, dedicated places of burial, charitable, health, welfare, fraternal, or education purposes. It further provides that none of the property listed in Paragraph B shall be exempt if owned, operated, leased, or used for commercial purposes unrelated to the exempt purposes of the corporation or association. Assessor Williams points to the fact that in addition to the allowed purposes of charitable and educational, NOHC's avowed purposes are also community and healing, two purposes not allowed by La. Const. art. VII, § 21(B)(1)(a)(i).

Likewise, Assessor Williams alleges that NOHC cannot meet its burden of proving that it operated exclusively for the enumerated purposes set forth in La. Const. art. VII, § 21(B)(1)(a)(i). He points out that NOHC appears to equate its exempt status under IRC Section 501(c)(3) from paying federal income tax with its requested exempt status for ad valorem taxes under La. Const. art. VII, § 21(B)(1)(a)(i). However, these two provisions do not have the same requirements.

36

The list of approved purposes of Section 501(c)(3) includes scientific, testing for public safety, literary, fostering sports competitions, preventing cruelty to children, and preventing cruelty to animals, none of which is an exclusive purpose listed in La. Const. art. VII, § 21(B)(1)(a)(i), while some of the purposes of La. Const. art. VII, § 21(B)(1)(a)(i) would not be acceptable for Section 501(c)(3) purposes.

We find that NOHC failed to show in its Motion for Summary Judgment and attachments thereto that it will meet its burden of showing that it was exclusively organized and operated pursuant to one or more purposes set forth in La. Const. art. VII, § 21(B)(1)(a)(i). Many of NOHC's "purposes" as set forth in its pleadings are generalized and arguably could fall within the definition of "charitable," but such possibility does not amount to a showing that NOHC would prevail at trial on this issue. Because there are genuine issues of material fact and reasonable minds could differ on this issue, we conclude that the trial court erred in granting NOHC's Motion for Summary Judgment. *See* La. C.C.P. art. 966; *Jones*, 2022-0154, p. 13, ___ So.3d at ___, 2022 WL 5110928, at *6 (quoting *Knox*, 2021-0419, p. 10, ___ So.3d at ___, 2021 WL 4771758, at *5).

**4.    NOHC failed to show that it met requirement (6), relying on erroneous law; and**

**5.    Assessor Williams has established NOHC cannot prove requirement (6) because the Healing Center was used for commercial purposes unrelated to NOHC's exempt purpose.**

In these assignments of error, Assessor Williams asserts that NOHC failed to show that the tenants used the Healing Center exclusively for the permitted exempt purposes NOHC listed in its application for the exemption. He also argues that NOHC erroneously relies for support upon the case of *Pratt-Stanton Manor Corp. v. Parish of Orleans*, which addressed only the taxpayer's purpose of operation,

37

not whether the property was operated for a commercial purpose unrelated to the nonprofit's exempt purpose. 2002-0358 (La. App. 4 Cir. 6/19/02), 821 So.2d 748. In addition, Assessor Williams asserts that he has established that NOHC cannot show that the Healing Center was not used for commercial purposes unrelated to the exempt purposes of NOHC.[7] As noted above, the only purposes that NOHC adopted in its Articles of Incorporation that fit within the requirements of La. Const. art. VII, § 21(B)(1)(a)(i) are charitable and educational; therefore, Assessor Williams contends that NOHC must show that none of its tenants conducted their businesses for a commercial purpose unrelated to NOHC's exempt purpose.

First, Assessor Williams points to the fact that NOHC never provided an accurate list of tenants: he asserts that the list varies between the pleadings, affidavits, financial records, etc. He notes that twenty-five of twenty-six tenants listed in NOHC's Motion for Summary Judgment are nonprofits, but NOHC made no argument that these tenants offered goods or services for free or at reduced cost, or that there was any restriction by NOHC on how much the tenant could charge. At best, Assessor Williams contends that NOHC stated that the goods and services of some tenants are provided at "affordable" rates or costs. Additionally, Assessor Williams notes that while NOHC stated that each tenant signed its Credo, NOHC never produced any signed copies of the Credo, despite his requests for them in discovery. He also notes that the signed leases that NOHC provided did not reference the Credo.

Assessor Williams also points out inconsistencies in NOHC's pleadings with respect to how NOHC vetted its potential tenants to ensure that their businesses

---

[7] Assessor Williams also argues that NOHC cannot show its own charitable purpose because it charges rent to its tenants at full market value and adds overhead costs.

would further NOHC's exempt purpose under La. Const. art. VII, § 21(B)(1)(a)(i). NOHC originally stated that it used a three-part test to vet its tenants: the tenant had to accept NOHC's mission statement; the tenant had to agree and abide by NOHC's Credo; and the tenant had to submit an application showing its qualifications. Later, NOHC admitted that it did not require an application; instead it required the tenant to submit a business plan and a signed Credo. In his Reply Brief, Assessor Williams additionally notes that almost all of the Healing Center's tenants signed leases before SC/SRR donated the building to NOHC, and it was difficult to determine how NOHC vetted them.

Assessor Williams further points out that while NOHC asserted that the tenants provided service not otherwise available in the area, he supplied evidence that there were other similar services available in the area. Assessor Williams notes that merely labeling a service or business as a form of "healing" does not show that it is a business conducted within an exempt purpose for La. Const. art. VII, § 21(B)(1)(a)(i) purposes.

In its Appellee Brief, NOHC argues that it is entitled to the exemption because it is a nonprofit that is exempt from the payment of income taxes under Section 501(c)(3). It also asserts that it was organized and operated "exclusively" for broad charitable purposes. NOHC points to its Articles of Incorporation and asks this Court not to penalize it because it did not specify how each of its acts and those of its tenants was charitable.[8]

We find that the competing Motions for Summary Judgment and their respective attachments show that there are genuine issues of material fact that

---

[8] NOHC also argues that it will be forced to close if it does not obtain the tax exemption.

preclude the granting of the motions on either side. NOHC's lack of specificity in its Motion for Summary Judgment as to how each of its 2020 tenants furthered NOHC's avowed charitable purpose does not preclude it doing so at trial: this merely establishes that NOHC failed to carry its burden in its Motion for Summary Judgment. Thus, the trial court erred by granting NOHC's Motion for Summary Judgment. Likewise, because NOHC may be able to carry this burden at trial, the trial court correctly denied Assessor Williams' Motion for Summary Judgment. Having reversed the trial court's ruling on NOHC's Motion for Summary Judgment, we remand this matter for further proceedings.

**6. Whether the Trial Court's Rulings Were Based on Facts Contrary to the Record and on Inadmissible Evidence to Which Assessor Williams Had Objected.**

Lastly, Assessor Williams contends that the trial court's rulings on the Motions for Summary Judgment must be reversed because they were based "*in toto*" on arguments and attachments contained in NOHC's Motion for Summary Judgment and in NOHC's Opposition to Assessor Williams' Motion for Summary Judgment. He points to the inconsistencies in NOHC's various pleadings and documents. Assessor Williams also notes that he had objected to most of Ms. Marcello's affidavit and its attached documents on the basis of the hearsay nature of some of her statements and the lack of authentication of the attachments but that the trial court failed to rule on his objections. Because we reverse the trial court's ruling on NOHC's Motion for Summary Judgment and remand the case for further proceedings, the trial court should rule on Assessor Williams' objections on remand.

**DECREE**

Considering the foregoing, we affirm the trial court's denial of Assessor Williams' Motion for Summary Judgment; reverse the trial court's granting of NOHC's Motion for Summary Judgment; deny Assessor Williams' Exceptions of Prescription and No Cause of Action; deny NOHC's Motion to Strike Assessor Williams' Reply Brief; and remand this case for further proceedings consistent with this Opinion, including a ruling by the trial court on Assessor Williams' objections to evidence provided by NOHC.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS**